## S. P. BENNETT v. GEORGE E. HUTCHINSON, *et al.*

1. MARRIED WOMAN'S ACT OF 1859; *Repeal.* The fourth section of the married woman's act of 1859 was repealed by implication by the first section of the act of 1865 relating to wills.

2. WILL, *of Married Woman; Estate.* From 1865 to 1868 a married woman could by will, without her husband's consent, devise away from him her entire estate.

*Error from Douglas District Court.*

ACTION for the partition of lands, commenced by *Bennett*, as plaintiff, against *George E. Hutchinson* and *Sarah F. Hutchinson*, and others, as defendants. The record shows that Rebecca D. Hutchinson, the mother of said *George E.* and *Sarah F.*, in her lifetime was the owner in fee of six certain lots in the city of Lawrence, and eighty acres of land outside the city, in Douglas county; that on the 11th of December 1865 she in her last will and testament devised the whole of said real property to said *George E.* and *Sarah F.*; that she died January 1st, 1866; that said will was duly made; that the time of the making of said will, and until her decease, she was the wife of George W. Hutchinson, the father of said *George E.* and *Sarah F.*; that said will was

made by said Rebecca D. without the consent in writing, and without any consent whatever, of said George W., her said husband; that the plaintiff *Bennett* commenced an action against said George W. in May 1867, and obtained therein an order of attachment which was levied on the undivided one-half part of said real property; that said action was duly prosecuted to final judgment in favor of said *Bennett* and against said George W., the said attachment-lien preserved, an order of sale issued, said undivided one-half of said lots and lands sold, and bid in by *Bennett,* the sale thereof confirmed, and a sheriff's deed therefor duly executed to said *Bennett* in January 1871. This action was commenced in February 1871. The plaintiff, *Bennett,* claimed to own the undivided one-half of said lots and lands, and averred that the defendants *George E.* and *Sarah F.,* and their assigns, were the owners of the other undivided one-half thereof, and he demanded judgment that a partition and division of said property be made according to the respective rights of the parties, etc. The defendants answered, alleging that under the will of said Rebecca D. said *George E.* and *Sarah F.* took the whole legal and equitable title in and to all of said lots and parcels of land, and they denied that the plaintiff had any right, title or interest in or to said property, or any part thereof. The action was tried at the November Term 1872 of the district court. Said court found that the plaintiff had no right, title, or estate in said property, and gave judgment in favor of the defendants and against the plaintiff for costs, and plaintiff *Bennett* brings the case here for review.

*Thacher & Stephens,* for plaintiff in error:

1. The court below by its findings of fact and law, did not decide the question submitted to it, but decided an entirely different question — namely, the effect of not appealing from the probate of the will. No finding of facts by the court were necessary, as the parties had settled them, and only called upon the court for the law applicable to them. Outside of these admitted or "agreed facts" there was no evidence what-

soever of any other fact. So that the question here is, Did the court below decide correctly on the facts as *agreed* to by the parties themselves? not on a *supposed* state of facts suggested by the court on its own motion. And upon these admitted facts, where are the rights of the parties?

The plaintiff claimed title to one undivided-half of the lands in the petition described, by virtue of a judgment, and sale of the lands thereunder, against George W. Hutchinson. George W. was the husband of Rebecca D., who died in January 1866, seized of the lands in question. By a will executed a few weeks before her death, she devised to the defendants in error the entire title — so far as she could — to the lands in suit. That will was made without the consent of her husband, either in writing or otherwise *at any time*. It was agreed between the parties that the sole question in the case was, "whether the will of the testator, being made without the consent of her said husband at any time, is sufficient to pass the title to the lands and lots to the devisees, defendants herein, as against her husband and his creditors."

In the case of *Waters v. Cullen*, 2 Bradford's Surrogate, 354, it is held: "As the law now stands, all married women have the capacity to make a will. What real or personal property passes by the will, and what does not, is clearly a matter which has nothing to do with the probate in this class of cases, more than any other. The *power* to make a will is one thing, and the power *to dispose of certain property*, another. The former relates to the personal capacity and the probate, the latter to the effect of the instrument when proved, and in its construction." Sec. 55 of ch. 86, Laws of 1865, (p. 181,) states that all the estate the devisor can "lawfully devise," shall pass, if such be the intention of the testator; but how much that is, is not at all determined by the will itself, or the probate of it, any more than the acknowledgment of a deed or any other formality connected with it fixes the estate the grantor therein is possessed of, or can convey. The limitation found in § 19 of said ch. 86, as to contesting the will, has no bearing whatever on the estate

possible for the devisor to pass.   Hence, whether the will
was probated or not, does not affect the question whether the
wife can devise more than one-half of her estate away from
her husband without his consent in writing.

2. The case was argued in the court below by the defend-
ants on the theory that § 1 of said ch. 86 of the laws of 1865
repealed, by necessary and unavoidable implication, § 4 of
ch. 94, laws of 1859, (Comp. Laws, 697.)   And this still
remains the real question in the case.   For it is admitted
that the creditors had the same rights in the etsate, if it once
passed to George W., the husband, as he himself had — it
was his property subject to the payment of his debts.

Repeals by implication are not favored and are only allowed
in cases clearly irreconcilable on any other construction.   All
laws on the same subject-matter are to be construed together,.
and harmonized if possible, and that too whether passed by
the same legislature or by different bodies.   These are well
fixed canons of interpretation. (Sedgw. on Stat. and Const.
Law, 126, 127.)   The law as to the rights of the husband in
the wife's estate was first passed February 7th, 1859, and has
been the law of Kansas ever since, unless it was repealed, as
claimed by defendants, in 1865, from which time it disap-
peared from the policy of the state on this subject until
1868 — three years — when it was once more adopted as the
law of the land: § 35, ch. 117, Gen. Stat.   A policy so vacil-
lating, on a subject of so much importance, ought not to be
ascribed to the legislion of the state, unless imperiously
required.   It will be noticed that the attention of the legis-
lature of 1865 was drawn to the existing laws on the subject
of wills, for in § 81 of ch. 86, it is expressly declared that
the law approved February 9th 1859, "an act relating to
wills," is repealed.   If the maxim *expressio unius, exclusio
alterius*, has any force, it would seem that having pointed out
the particular law on the statute book intended to be supplied
by this new legislation, all other laws on the same subject,
were intended by the legislature to abide.   This view is
strengthened by consulting §§ 5 and 29, ch. 72, Comp. Laws,.

wherein it is declared that one-half of the estate of either husband or wife to which the one did not hold the title had made no relinquishment of his or her rights, should descend to such husband or wife in case of surviving the one so seized. This law of descents must also have been repealed by implication by § 1 of the laws of 1865, if the view claimed by defendants is correct. In other words, the decision of the court below rests on the hypothesis that from 1865 to 1868, husband or wife holding title to real estate could divest the other by will of all interest in or right to it.

But the law of 1865 does not claim to repeal any existing statute on the subject save one, and many of its provisions clearly recognize the existence and continuation of the laws claimed to have been repealed. Sections 44, 45 and 46, expressly recognize the widow's rights in her husband's property as "provision made for her by law." What law? Of course the very laws whose repeal is claimed. The second section of the dower act of 1860, Comp. Laws, 478, expressly recognizes these acts as valid and in full force. The "provision by law" for the widow, must refer to all the statutes mentioned in § 2 of the "act relating to dower." And this dower act was one year later in its passage than either the laws relating to descents, or that defining rights growing out of the married relation. And yet these acts are recognized by the legislature of 1860 as subsisting laws, and this, too, though the 1st section of the act of 1869, "an act regulating wills," (Comp. Laws, 903,) is full as broad in its language defining who may make a will, as is the 1st section of the law of 1865, for which so much is claimed by defendants. No greater devising power is created by one than the other.

At common law, a married woman had no power to make a will devising real estate. (12 Mass., 525; 2 Kent, 170.) But § 4 of the married woman's act of 1859 expressly conferred this right, and the will in question obtains from that section its efficacy, rather than from § 1 of the law of 1865. The right of the testator to make this will, came from the statute. "The capacity of *femes covert* to make wills is

derived from statute." (2 Washb. Real Prop., 739.)    But the
statute granting the power, has expressly limited it so far as
the husband is concerned, to *one-half* of the property.    The
statute is more than this — it is *prohibitory.*    She "shall *not*
bequeath away from her husband," is the unmistakable lan-
guage used.    His consent to do so must be "in writing," and
the consent in writing must run to the particular will.    It
cannot be a general consent. (*George v. Bussing*, 15 B. Mon.,
563.)    The court says: "It must be proved that he has con-
sented *to the particular will* which she has made, and his consent
should be given when it is proved.    The reason of this is, he
may revoke his consent at any time during his wife's life, or
after her death before probate." *Osgood v. Breed*, 12 Mass.,
525; *Morse v. Thompson*, 5 Cush., 563.    The agreed facts
show that the husband *never* at any time consented to this
will, either in writing or otherwise.

If the construction claimed by the defendants be correct,
why does not the devising power extend to the homestead as
well as all other realty of which either husband or wife might
have died seized?    In such a case the defendants answer it
was beyond the power of the legislature to nullify the con-
stitutional provisions on that subject, and so we say; and
therefore both sides unite in affirming, that, as the courts will
not, without the clearest language, ascribe to the legislature
an intent to violate the constitution, this law of 1865 must
be construed as intending to grant power to a devisor to
convey such lands as she "lawfully could devise" under the
constitution, but we add, and under the existing statutes.
The construction which saves the legislature from the charge
of attempting a violation of the constitution, also as fairly
and reasonably saves all the antecedent legislation on the
same subject.

The first section of the law of 1865 provides that the will
made by testator shall be subject to the "provisions of this
act," and to that extent limits the devising power.    But the
"provisions of this act" on this point clearly affirm that the
grant shall not extend to any estate that the devisor may not

"lawfully devise." Section 55 of this act says that the will shall be so "construed." Plainly, this clause of the act recognizes a legal disability in a testator to devise an entire "estate." All these statutes can well stand together. They are not discordant, and repugnant to each other, but are harmonious. The construction we contend for leaves our legislation on this subject consistent and just from the date of the first act passed. The other construction makes it contradictory and harsh.

It is not disputed that Bennett has the right to recover, if Geo. W. Hutchinson has the right. The plaintiff succeeded to his right, and may insist on the statutory prohibitions. (4 Abbott's Prac., N. S., 427.) We ask this court to render the judgment in favor of the plaintiff that the court below should have entered upon the admitted facts.

*Wilson Shannon*, and *Riggs, Nevison & Simpson*, for defendants in error:

1. The facts in this case are all contained in the special findings of fact by the court. The parties agreed to certain facts in the court below, but it was not the understanding of the counsel for the defendants in error, nor was it the understanding of the court below, that these were the only facts in the case. There are facts set forth in the pleadings which neither party controverted at the trial, which are material, and the court has carefully found all the material facts in the case; and the question for the decision of this court is, whether the court below determined the law correctly, arising on these facts so found by the court.

If George W. Hutchinson had no legal estate in the lots and land in question, at the time they were taken in attachment, which could be levied on and sold on execution, then the plaintiff Bennett took nothing by his purchase at sheriff sale or by his sheriff's deed, and consequently has no interest in the lots and land in question; and is not entitled to partition.

The plaintiff in error claims that the sole question in this

·case is, whether the will of Rebecca D. Hutchinson, being made without the consent of her husband at any time, is sufficient to pass the title to the lands and lots to the devisees, the defendants in error, as against the husband and his creditors. We do not think this is the proper way to state the question involved. The question in this case is not what title the defendants have in the lots and lands in question, but what title had George W. Hutchinson in the premises in question at the time they were taken in attachment at the suit of the plaintiff. Had he at that time any interest in the premises in question that could be levied on and sold by his creditors? Then if he had, that title would pass by the levy, sale, confirmation and sheriff's deed, to the plaintiff. If he had no such title, then it is clear the plaintiff has no title.

At the time Mrs. Hutchinson made her will, and at the time of her death and the probate of the will, the act relating to wills and to repeal former acts relating thereto, passed 14th of February 1865, was in force, and was the only act vesting in persons the power to make a will and dispose of their property. (Acts of 1865, p. 169.) Sec. 1 of this act gave to Mrs. H. the unlimited right to devise her property, both real and personal, to whom she pleased, subject only to the rights of creditors and the provisions of said act. There is no creditor of Mrs. H. to question the devises in her will. What other restrictions are imposed on her power to make a will by the provisions of said act? We must look to the provisions of the act for all the restrictions imposed on her power to devise her property. Section 55 provides that every devise of lands, etc., in any will hereafter made, shall be construed to convey all the estate of the devisor therein which he could lawfully devise. This section is to be construed in connection with the latter clause of § 1. By this act he cannot lawfully devise his property so as to defeat the rights of his creditors — nor so as to defeat the right of the widow to dower — or to take under the will, or to remain in the mansion house of her husband one year, and to receive one year's allowance for the support of herself and children, as now

provided by law, unless the will shall expressly otherwise direct. (See §§ 43 and 44.) Section 60 provides for the protection of creditors, and § 61 and some other sections interfere with and disturb the devises of a will in certain cases and for certain purposes, and the testator cannot lawfully devise his property so as to conflict with and disturb the rights secured by the above section. But with the limitations and restrictions above mentioned, and perhaps some other unimportant ones, the power of a testator to dispose of his property by will to whom he pleases, is full and complete under § 1 of the act of 1865, and there are no other restrictions on that power except such as are provided for by the last-named act.

It is claimed for the plaintiff that the 4th section of the act entitled "an act to protect the rights of married women, and in relation to the liabilities incident to the marriage relation," passed 7th of February 1859, (Comp. Laws, p. 697,) was in force at the time Mrs. Hutchinson made her will and at the time of her death, and that by that section she could not devise away from her husband the one-half of her real estate; and that if she did, not only the husband, but the creditors of the husband, could call in question such a devise. Section 1 of the act of 1865 repeals by necessary implication said 4th section of the act of 1859, and also the 9th section of said act. This will be made manifest by comparing the two sections together. It is not possible for § 1 of the act of 1865, and § 4 of the act of 1859 to stand together. One section gives the unlimited right to devise by will all property; the other that the wife can only devise the one-half. It is clear that there is a direct conflict, and when that is the case the old statute must give way to the new one, which is the latest expression of the legislative will. We are aware that it is said in the books that a repeal of a statute by implication is not favored. But it is also clearly laid down in the authorities that where the latter statute is manifestly inconsistent with the former it must give way to the latter. Statutes are often held to be constructively repealed. Sedgw.

on Stat. Construction, 121, 124, 125; 21 Pick., 373; 12 Mass., 537.  We think it is clear that the act of 1865 revises the whole subject of wills, and that by that statute it was clearly intended to prescribe the only rule that should prevail in the case provided for — that is, as to the *power* to devise.

2.  But admitting for the sake of the argument, that § 4 of the act of 1859 was not repealed by the act of 1865, no title to the lots and lands in question passed to George W. Hutchinson by descent on the death of his wife.  On the contrary, the property in question passed by the devise in the will to the defendants.  The will of Mrs. Hutchinson was a valid will, and was duly admitted to probate, and when probated related back to the death of the testator and passed all her right and title in and to the lots and land in question to her children, the devisees in the will — subject, it is true, if the said 4th section was in force, to the claims of the husband to the one-half thereof if he saw proper to claim it and should make his claim in due time.  The will has not been set aside either in whole or in part by any judicial proceeding instituted for that purpose.  George W. Hutchinson, the husband, has never asked to have that will set aside, either in whole or in part; and he is not now claiming and never has claimed any portion of the property of his wife either by descent or otherwise.  Sections 15, 16 and 17 of the act of 1865, show the force and effect to be given to a will and the record thereof, when admitted to probate; and the 19th section provides that "If no person interested shall within two years after probate appear and contest the validity of the will, the probate shall be forever binding, saving to infants," etc.  The will was admitted to probate on the 6th of February 1866, more than two years before the plaintiff in error obtained his sheriff's deed, and before he had any claim or interest in the property; and near six years before the commencement of the suit in the court below, (January 31, 1871,) so that neither George W. Hutchinson nor the plaintiff can at this day call in question the will of Mrs. Hutchinson, nor the title of the devisees to the lots and land in question, devised by said will.

Under no circumstances can a will once admitted to probate be called in question in a collateral proceeding as this is. A person in order to contest this will, and have it judicially declared not to be the will of Mrs. Hutchinson as to the one-half of the property devised, must be interested in the property, and no one but the husband can have such interest; he must commence a direct proceeding before a court having jurisdiction to hear and adjudicate the matter; and he must commence his proceeding within two years after the probate of the will. The plaintiff therefore could not now and never could have questioned the will. It follows therefore that at the time of the levy, sale, confirmation and sheriff's deed, George W. Hutchinson had no title or interest in the land and lots in question, to be levied on and sold, and that consequently the plaintiff took nothing by his sheriff's deed, and has no title in the property in question, and never had any; and that the time has gone by when any one can question the validity of that will or the title of any one holding under it.

The opinion of the court was delivered by

BREWER, J.: The only question in this case is as to the existence of an implied repeal. The fourth section of the married woman's act of 1859 is as follows: "Any woman may while married make a will, but she shall not bequeath away from her husband more than one-half of her property, both personal and real, without his consent in writing." (Comp. Laws, 697, § 4.) In 1865 an act was passed relating to wills. The first section of this act provides "that any person of full age and sound memory, having an interest in lands, tenements and hereditaments, or any annuity or rent charged upon or issuing out of the same, or any goods, chattels, rights, credits, choses in action or possession, or any other property of any description whatever, may give and devise the same to *any person*, by last will and testament lawfully executed, subject nevertheless to the rights of creditors, and the provisions of this act." (Laws of 1865, p. 169, § 1.)

In December 1865, Rebecca D. Hutchinson, a married woman, made her will devising all her real estate to her two children, the defendants in error. In 1866 she died. Her husband never gave any consent in writing or otherwise to this will. Did the entire estate pass to the children, or one-half to the husband? The answer to this question depends on the answer which shall be given to the question whether the law of 1865 above quoted repealed that of 1859. If we ignore the questions of sex and coverture, and regard these two sections as simply grants of power to devise, their inconsistency would be too patent for doubt. The one grants power to devise one-half; the other to devise all. The last gives full power, which was limited by the first. The grant of full power repeals the limitations which attached to the former grant. Suppose the first section read like this: "Any man between the ages of 21 and 30 may make a will, but shall not bequeath away from his father more than one-half of his property without that father's consent in writing;" and the second was as at present: who would question the repeal? The only limitations on the full power given are, "the rights of creditors, and the provisions of this act." The first of course could not affect this question, and the second does not, at least adversely. As against this counsel urge — "The law as to the rights of the husband in the wife's estate, was first passed February 7th 1859, and has been the law of Kansas ever since, unless it was repealed, as claimed by defendants, in 1865, from which time it disappeared from the policy of the state on this subject until 1868 — three years — when it was once more adopted as the law of the land; § 35, ch. 117, Gen. Stat. A policy so vacillating, on a subject of so much importance, ought not to be ascribed to the legislation of the state, unless imperiously required." But we may not refuse to language its ordinary meaning for the sake of uniformity in legislation. That would practically be either a judicial abridgment of the power of one legislature to enact its will into law, or a judicial denial of its ability to express such will. Uniformity in legislation is as a general rule, de-

27—11 KAS.

sirable; but uniformity is not thus judicially attainable. Again, it is said that "the act of 1865 in terms repealed one law, to-wit, the law of 1859 entitled 'an act relating to wills.' *Expressio unius, exclusio alterius.*" Therefore the legislature intended that all other laws touching on the same subject should stand. True; but if one section of this conflicts with one of a previous law, both cannot stand. The earlier must give way to the later law. The legislature of 1865 authorized Mrs. Hutchinson to make this will. Can the act of any previous legislature be appealed to, to destroy this authority? Again, it is urged that at common law a married woman had no power to make a will devising real estate; that § 4 of the married woman's act of 1859 gives this power in terms, and that therefore the authority to make this will is derived from this section rather than from the act of 1865. In other words, the claim is, that the general terms of the act of 1865 do not include married women, and a decision of the supreme court of Indiana is cited upon somewhat similar words favoring such construction. Under § 6 of article 15 of the state constitution, and the general scope of our legislation concerning married women, and the general recognition in our statutes of their full control over their separate property, we should be compelled from the language of this section alone to construe it as including married women. But we need not rest with that. Sec. 77 of the same act reads "Every word in this act importing the masculine gender may extend and be applied to females as well as males; * * Provided, that no female, during her coverture, or life of the father of her child or children, shall, by virtue of this act, be authorized or empowered to appoint a testamentary guardian for any child she may have." True, this proviso has special reference to § 72; but surely, if a proviso was needed to limit the power of the wife and mother to appoint a testamentary guardian as against a section in which the term used is, "father," some restriction would have been expressed if it had been intended to exclude married women from the reach of a section which said "any

person." And again counsel urge, that "The first section of the law of 1865 provides that the will made by testator shall be subject to the 'provisions of this act,' and to that extent limits the devising power. But the 'provisions of this act' on this point clearly affirm that the grant shall not extend to any estate that the devisor may not 'lawfully devise.' Section 55 of this act says that the will shall be so 'construed.' Plainly, this clause of the act recognizes a legal disability in a testator to devise an entire 'estate.'" The section reads that "every devise of lands, etc., shall be construed to convey all the estate of the devisor therein, which he could lawfully devise, until it shall clearly appear that the devisor intended to convey a less estate." ·This creates no limitation. It provides simply a rule of construction. It is like the clause in § 2 of the act concerning conveyances, (Gen. Stat. p. 185,) which declares that "every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear, etc. It recognizes a legal disability to devise an entire estate, as counsel says; but it does not revive a disability otherwise dead, nor operate to continue in force a statute otherwise repealed. Its purpose, as all lawyers know, was to avoid the frequent controversies at the common law as to whether a devise passed only the life-estate or a fee-simple. Section 9 of the married woman's act of 1859 reads, "In case any married man shall hereafter deprive his wife of over one-half of his property by will, it shall be optional with such married woman, after the death of her husband, to accept the conditions of such will, or one-half of his whole estate, both real and personal." This prevents a husband from depriving his wife of more than one-half his estate against her wishes, as § 4 in like manner restrained the wife. True, one is in form a prohibition and the other an option, but the purpose sought to be accomplished is the same. Now in the act of 1865 by §§ 43, 44, 45 and 46, authority is given to the widow to elect whether to take under her husband's will, or be endowed as though he died intestate. This evidently is in lieu of § 9 above quoted. It

substitutes a new rule, but prevents the husband from depriving his wife of his entire estate. It is one of the "provisions of the act" by which the full testamentary power granted in the first section is limited. The matter of restriction was therefore in the thought of that legislature. It placed a restriction on the husband, but omitted to place any on the wife. And omitting this, it granted to every person full testamentary power, subject only to the rights of creditors, and the restrictions of its own enactment. We think therefore that there was an implied repeal, and that the judgment of the district court must be affirmed.

All the Justices concurring.