WELLS v. SMITH.

By our practice, it is not necessary for a vendor, under a covenant to convey, to make out
and tender a deed on the day the purchase is to be completed. He is not bound to pre-
pare it until the buyer is ready to demand it; and even then, the vendor is allowed a
reasonable time to draw and execute the deed. And after being thus drawn and exe-
cuted he is to hold it ready for delivery when required; and he is not in default until the
latter request is made. Although a purchaser may prepare the deed and tender it for ex-
ecution (and then only one demand is necessary) yet still the above appears to be the set-
tled law of the State.

Parties entering into a contract may make time the essence of it.

A short delay, indeed even a delay for a length of time fairly accounted for and so as to re-
pel the presumption of a waiver or abandonment of the contract, will not, ordinarily, de-
prive a party of his right to a specific performance. But, where the vendor requires and
the purchaser agrees to make time a condition of the contract and they insert the same as
a distinct and substantive part of the agreement, it must be kept.

Distinction between conditions precedent and subsequent.

Equity cannot relieve from the consequences of a condition precedent unperformed. But
upon the breach of a condition subsequent which would work a forfeiture or divest an
estate, a court of equity, acting upon the principle of compensation, will interpose and
prevent the forfeiture or divestment, provided it can be given with certainty in damages.

S. sold to W. a lot of land. By an agreement under the hands and seals of the parties, W.
covenanted to build within a certain time and give a bond and mortgage for a part and
pay the balance or give a bond and mortgage for the whole by a specified day; and S. co-
venanted to give a deed on this day. There was also a clause expressly showing that the
agreement was, in all respects, to be void, provided W. failed to perform any one of the
covenants. W. entered, but, from untoward circumstances and not from any act on the
part of S., was not ready with his money or the bond and mortgage on the day specified
in the agreement: but made a tender on the next day: HELD, to be a condition prece-
dent and that the court could not relieve.

April 30th.
1833.

Vendor and
Purchaser.
Time.
Conditions
precedent
and subse-
quent.

Bill by vendee against vendor for a specific performance
of a contract for the sale of a lot of land known as No. 708
Broadway, in the city of New York.

By the contract, under the hands and seals of the parties
and dated the first day of September one thousand eight
hundred and twenty-nine, the defendant, Clotilda Smith, co-
venanted, in consideration of and upon performance by the
complainant, Benjamin G. Wells, of the covenants on his
part, to convey to him the lot in question, free from all in-
cumbrance, except such taxes and assessments as might
thereafter become due. The complainant's covenants were

to the following effect: 1. To build a carpenter's shop on the rear part of the lot on or before the first day of March one thousand eight hundred and thirty, and not to remove the shop until the agreement was carried into full and complete effect. 2. To build and enclose upon the front of the lot a substantial brick house of three stories in height on or before the first day of August one thousand eight hundred and thirty-one, or, in lieu thereof and on the same day, to pay the defendant the sum of one thousand dollars on account of the consideration money. 3. To execute and deliver to the defendant, on the same day, a bond and mortgage (of the house and lot) for two thousand seven hundred dollars, payable with interest at six per cent. And if he did not pay the one thousand dollars on the said first day of August one thousand eight hundred and thirty-one, then this bond and mortgage were to be made out for three thousand seven hundred dollars, with interest: this being the full amount of consideration money for the purchase. 4. The complainant was to pay interest at the rate of six per centum per annum upon the sum of three thousand seven hundred dollars to the defendant from the date of the agreement to the first day of August one thousand eight hundred and thirty-one—the first half year's interest in advance—and all taxes and assessments.

The defendant also covenanted, on her part, to execute and deliver a deed for the lot on the first day of August one thousand eight hundred and thirty-one. And then followed this clause: "But upon this express condition and the agree-"ment between the parties is such that if the said Benjamin "G. Wells fails or neglects to perform all or any one of the "covenants herein before contained on his part, at the time "or times herein before limited, then and in such case all "and singular the covenants and agreements on the part of "the said Clotilda Smith shall cease and be absolutely void, "and all the right, title and interest of the said Benjamin "G. Wells in law or equity in the premises shall also cease, "and thereupon the said Clotilda Smith, her heirs or assigns "may immediately enter upon the premises and have and "hold the same, with the carpenter's shop, free and dis-"charged from any claims of the said Benjamin G. Wells."

The complainant, Benjamin G. Wells, entered into posses-sion of the lot, as purchaser, under the agreement ; and had performed all the covenants, except the erecting of a brick dwelling-house and paying or securing the purchase money on the day appointed.

All objection on the score of not building the house, appears to have been waived.

As the day approached for completing the contract, namely, the first day of August one thousand eight hundred and thirty-one, the complainant became desirous of paying the whole of the purchase money, instead of one thousand dollars only and giving a mortgage for the residue : as he wished to raise the whole on mortgage. The defendant consented to this, and agreed to execute a conveyance, provided the money was ready for her on the above day, but, at the same time, she gave him to understand he must not fail in doing this, and that if he suffered the day to pass without paying the money, she would avail herself of the condition expressed in the contract and refuse him the deed. A few days previous to the first day of August, the complainant attempted to procure the money and assured the defendant he should be ready with the whole amount or, at any rate, with the one thousand dollars : but his efforts to procure it failed : and the day passed without any tender of the money or demand of the deed being made. On the next day, however, (the second day of August) he obtained the whole amount, made a tender of it, and demanded the deed. The defendant refused to take the money and declared the contract to be at an end.

This led to the filing of the present bill.

Mr. *C. C. Goddard,* and Mr. *S. P. Staples,* for the complainants.

Mr. *R. Bogardus,* for the defendant.

Oct. 7th. THE VICE-CHANCELLOR :—The covenant sought to be enforced in this case against the defendant is clearly a dependent one. An action at law could not be sustained upon it, without averring and proving performance of the covenants

on the part of the complainant. As the latter had not performed them on the very day specified in the agreement, it is probable his remedy is for ever gone at law; and unless, therefore, this court can aid him, all benefit of the contract will be lost.

It has been contended in behalf of the complainant, that the defendant should have tendered a deed on the first day of August, in order to bring the complainant into default; and also, that the delay or failure on his part to pay the purchase money was owing to the defendant's not previously furnishing the draft or form of the deed to be executed by her, as was requested; in order that he might have had the title examined in season for the purpose of obtaining the money on mortgage of the property by the day fixed upon for completing the purchase. According to our practice, which is different from the English, it was not the duty of the defendant to make out and tender a deed on this first day of August. The party who is to give the deed has the same drawn at his own expense; but, under a covenant to convey, as in this instance, he is not bound to prepare the conveyance until the party who is to receive it is in a situation rightfully to demand it. And after such demand, the grantor is allowed a reasonable time for drawing and executing the deed; and he is then to hold it ready for delivery when called for and is in no default until a second demand is made. The purchaser nevertheless may prepare the deed and tender it for execution—and then only one demand is necessary. The above appears to be the settled law of this State: *Fuller* v. *Hubbard*, 6 Cow. 1.; *Connelly* v. *Pierce*, 7 Wend. 129.

Nor do I perceive how any portion of the delay which took place in examining the title, and which has produced all the difficulty, can be imputed to the defendant; provided she was not bound, in the first instance, to prepare the deed. An abstract of title was not requested. The complainant applied to her for the deed unexecuted, which she was to give him properly signed, sealed and acknowledged—and this was done, not because he could then have demanded it of her, but as a favor and for the purpose of having the records examined in regard to title and incumbrances. The complainant put this instrument into the hands of an attorney on

11

**1833.**

WELLS
*v.*
SMITH.

Friday preceding the first day of August, for the purpose of having the necessary examinations made. But, for such a purpose, there was no occasion to wait until the proposed conveyance was prepared. The complainant held a counterpart of the written contract, which contained a full description of the lot, its location and boundaries ; and by means of this instrument, the examination could have been made. The former title deeds appear not to have been asked for. Under these circumstances, the defendant was not in fault. Nor is she chargeable with causing the delay in setting about the title or with the dilatoriness wherewith the examination was conducted. The case then resolves itself into two questions: 1. How far was time the essence of the contract ; and, 2. If the day was material, is the complainant to be relieved from the forfeiture consequent upon his non-fulfilment of the contract within the time specified ?

Whatever notions may have been formerly entertained as to the time, specified in the contract, not being material and to be unregarded as an essential, it is now admitted that time may be made of the essence of the contract and effect will be given to it, as well in equity as at law. After examining a number of cases on the subject, Mr. Sudgen observes : " We may therefore venture to assert that if it clear- " ly appears to be the intention of the parties to an agree- " ment that time should be deemed of the essence of the con- " tract, it must be so considered in equity :" p. 292. The observation occurs in early editions of this author's Treatise on Vendors. Subsequent decisions have proved its correctness. In *Hudson* v. *Bartram*, 3 Mad. R. 440. the Vice-Chancellor, Sir John Leach, following Lord Eldon in *Levy* v. *Lindon*, 3. Meriv. 84. and in *Boehm* v. *Wood*, 1 Jac. & W. 419. admits the principle that here, as at law, time may be of the essence of the contract, although a strict performance may be waived by the conduct of the opposite party. And the still later case of *Williams* v. *Edwards*, 2 Sim. R. 78. proves, how time may not only be made material as a part of the contract, but that a bill for a specific performance will be dismissed with costs where the parties have stipulated that the agreement should be void and delivered up to be cancelled if, in the opinion of counsel, a marketable title

could not be made by the time appointed for completing the purchase, and which time had elapsed. Upon the authority of these cases, the able writer to whom we have referred, in the last edition of his Treatise on Vendors, considers the doubt which had existed in relation to time being deemed a part of the essence of the contract as now at an end; and he observes further, it is difficult to understand how it ever arose: (Sugden on Vend. 8. Edit. 382.)

Since, then, parties entering into a contract may make the time of performance a material part of it, have they done so in the case now under consideration? The agreement in question is precise and particular as to the day on or before which several things are to be done. Those, on the part of the purchaser, are conditions to the defendant's giving a deed, and which is the only thing she is to perform. If the agreement had gone no further than merely to specify the day of performance, then, considering the subject matter of the contract, it might not be deemed in equity so essential as to require a strict performance on the day. And a short delay—indeed, even a delay for a length of time fairly accounted for and so as to repel the presumption of a waiver or abandonment of the contract, will not, ordinarily, deprive a party of his right to a specific performance. But, where, as in the present case, the vendor requires and the purchaser agrees to make it a condition of the contract and they insert the same as a distinct and substantive part of the agreement, namely, that a failure or neglect of the purchaser to perform all or any one of his covenants at the time specified (including the payment of the purchase money on a future day) shall absolutely determine the contract and the rights of the purchaser shall cease at law and in equity and the vendor be at liberty to re-enter and hold the property discharged from all claim by the purchaser, it appears impossible to regard it as an unmeaning provision. If there be any form of words by which parties can bind themselves to strict performance, they have done it in this instance. Nothing can be stronger than the clause in question. It is full and explicit, and leaves no room to doubt the intention of making time an essential ingredient of the contract.

The next question then is: whether this court, under the

circumstances, can relieve the party from the consequences of his own default ?—a default, as already observed, not imputable to the defendant or founded upon any waiver on her part or attributable to accident, mistake or surprise so as to authorise an interference on any such account. It is a naked case of a condition unperformed within time. Much depends upon the nature and effect of the condition. The uniform object of a condition is to defeat or avoid an estate: *Preston's Shep. Touch.* 117. If it be a condition precedent, it defeats or rather avoids the estate, by not permitting the estate to vest until the condition is literally performed. In case it be a condition subsequent, the non-performance defeats the estate, by divesting the party of his title and the interest already vested: because the continuance is made to depend upon the performance of the act or the happening of the stipulated contingency. The first operates by giving an estate and conferring a benefit; and the second, as a defeazance or the destruction of an estate already raised and vested. This distinction is important in the view of a court of equity: because it can, upon principle, interfere with and controul the effect of one species of condition and not of the other. The condition of the contract in question is clearly a condition precedent. No one can peruse it without perceiving that every act which the complainant has stipulated to perform is antecedent to what the defendant is to do. The performance of the covenants on the part of the former are made the consideration for the covenant of the latter to convey to him. It is only upon these conditions, a deed is to be executed and delivered. If he fail in any one particular, the agreement ceases to be obligatory upon her. It is true he was to go into possession, make improvements on the lot and pay interest on the purchase money, as well as all taxes and assessments, but all this appears to be the result of a mere possessory right as tenant until the time for a fulfilment of the contract should arrive: and not the effect of any vested right or title. There are no words of grant in the contract itself. It rests merely in covenant on the part of the defendant, and no estate was to arise to him except upon the performance of the condition. This is, therefore, the case of a condition precedent, where no estate vests in law until the condition is perform-

1833.

WELLS
v.
SMITH.

ed: Coke Litt. 206. a.; *Harvey* v. *Aston*, 1 Atk. 361. *S. C.* West's R. 350., and Com. Rep. 726.

It is next to be seen whether, in such cases, a court of equity can aid the party and help him to the estate notwithstanding the breach of the condition?

Whatever confusion there may be in some of the earlier cases on the subject—and it must be admitted there are some which seem to be contradictory and irreconcileable and a few which appear to have been reversed in the House of Lords (1. Chan. Ca. 90. note; 1. Eq. Cas. Abr. 107. B.; Freeman's C. R. 35. and 220. n.; 1. Vern. 83.; 3 Ch. Cas. 119. and Colles' P. C. 10.) yet when we come down to the period of a more systematic equity jurisdiction, we find the decisions assuming greater steadiness and uniformity of character on this point. I shall begin with the decision of Lord Hardwicke in *Reynish* v. *Martin*, 3. Atk. 330. In this case, a legacy had been left to a daughter, upon the condition of her marrying with the consent of her trustees. She had married without their consent. A bill was filed for the legacy. His Lordship noticed the objection of its being a condition precedent unperformed. And he considered that, as there had been a breach of the condition and because the law would not, therefore equity could not help the party. In reference to the legacy being originally a charge upon lands, he observed, "It must have the same consideration as a devise of "lands would have; and in that case, nothing could be "clearer than that the legacy could not be raised, because "nothing vested before the condition performed."

The case of *Hervey* v. *Aston*, above referred to, was similar and involved the same principle. It had been previously decided by Lord Hardwicke on an appeal from the Rolls; and, after an elaborate discussion, it was decided by his lordship with the assistance of the judges. I would next refer to *Scott* v. *Tyler*, before Lord Thurlow (2 Bro. C. C. 431.) as containing a full exposition of the law on this subject. Here, also, was a legacy given upon condition of the legatee's marrying with the consent of her mother; and which had not been done. The question as to the validity of such a condition, as well as the effect of non-performance, drew forth able and learned arguments from the numerous

counsel in the cause, and among whom we find Mansfield, Scott, Hargrave, Plumer and Mitford. The argument of Mr. Hargrave embraced and explained in the clearest manner the doctrine and effect of conditions precedent and subsequent and the jurisdiction of equity over them—and which argument the counsel based upon a review of all the cases. He showed, I think, very conclusively and upon the soundest principles, that equity cannot interpose to relieve from the consequences of a condition precedent unperformed, although, with respect to conditions subsequent the doctrine is very different. The decision of Lord Thurlow was in accordance with this view of the law and with Lord Hardwicke's judgment in the former cases.

The decisions in *Powell* v. *Pellett*, 2 Eq. Ca. Abr. 209. pl. 3. and *Sweet* v. *Anderson*, 2 Bro. P. C. 256. are also authorities for the same doctrine and bear directly upon the point.

And this doctrine I consider to be brought down to the present day by the recent cases of *Duffield* v. *Elwes*, 1. S. & S. 239.; *Long* v. *Ricketts*, 2. S. & S. 179.: and *Clifford* v. *Beaumont*, 4. Russ. 425. It is founded in reason and justice. A man enters into a contract or makes a deed of settlement or a will (the instrument is immaterial) and he agrees to grant or devise an estate upon a condition which he declares must be performed before the person to be benefitted can take it. No court of law or equity can have a right to say that the condition, which is lawful in itself and one the party had a right to impose, shall be dispensed with. In order to do this, the contract or act of the party himself must be annulled and one created by the court put in its place. This would be contrary to reason and the assumption of a power which I, for one, must disclaim.

The principle whereon the court is to act in relation to conditions subsequent is widely different. In cases of this sort, if a breach or non-performance happens, the effect of which is to work a forfeiture or divest an estate, the court, acting upon the principle of compensation to the party for the injury sustained by the breach, will interpose and prevent the forfeiture. On account of the nature of conditions subsequent, they are said to fall within the lenient principle by which equity relieves against penalties; and the court will

1833.

WELLS
v.
SMITH.

only give relief where compensation can be made in damages. There may even be cases of conditions subsequent unperformed in which the court will not relieve from forfeiture on account of the difficulty of ascertaining, with any degree of certainty, the amount or adequacy of compensation to be allowed: *Jeremy's Eq. Jur.* 475. It is unnecessary, however, to pursue this branch of the subject. The present case does not fall within it.

There is one view taken of this cause upon the argument which I feel bound to notice. It is this, that the contract between the parties is, in effect, a sale and a mortgage back for the purchase money and the purchaser going into possession under the contract makes it so; and that it operates as a mortgage to the defendant who has all the security and rights of a mortgagee and the complainant the rights of a mortgagor entitled to redeem, even though the mortgage may be forfeited by non-payment on the day specified. By way of meeting some portion of this argument, it may be asked: why did not the parties put the transaction in the form of a conveyance of the title and legal estate and of a mortgage back, by executing the proper instruments for the purpose, provided they intended it should have such an effect? Now, this they have not done; but, on the contrary, have left the whole to rest in covenant. The title did not pass; and I am not at liberty to suppose the parties intended it should have passed, or that any effect was to be given to the contract beyond the plain import of its terms or inconsistent with the rules of law. The great difficulty, however, in giving to the transaction the effect of a mortgage and regarding the parties as mortgagee and mortgagor is, that no legal title or estate has ever vested in the complainant :—for, as before remarked, the contract amounted to an agreement to convey and that too upon a condition, and not to a conveyance. In my judgment, the whole claim and right of the party depends upon this point.

With respect to mortgages in general for securing the payment of money, it may be observed, that the conditions upon which they are given are conditions subsequent, and, therefore, in regarding them as they are known to the common law—independently of improvements growing out of

1833.

WELLS
v.
SMITH.

statutory regulations—the court of chancery can always relieve from a forfeiture of the estate on a breach of the condition: because it is enabled to award compensation in the payment of principal and interest of the debt to the mortgagee. As I feel myself bound to give effect to the transaction between these parties as a mere matter of contract *in fieri* and constrained by principle and upon authority to regard the condition of the contract in this case as a precedent condition, the strict performance of which was necessary in order to entitle the complainant to a fulfilment of it on the part of the defendant, I cannot extend to him the relief of a mortgagor. The consequence may be a great hardship upon him: but this he, himself, should have foreseen and prevented by a greater diligence on his part and on the part of those upon whom he was induced to rely for the means of completing the purchase. A little exertion would have accomplished the object and saved trouble and expense.

The bill must be dismissed; but, under the circumstances, without costs.