[No. 13489.   In Bank. — December 29, 1891.]

# W. H. ALEXANDER, APPELLANT, v. W. A. JACKSON ET AL., RESPONDENTS.

HOMESTEAD — EQUITABLE TITLE — CONTRACT OF SALE — RELATIVE RIGHTS — CONVEYANCE. — An equitable title to land acquired under a contract of sale is an estate in the land subject to be impressed with the lien of a homestead as fully as an estate in fee, though it is subordinate to the rights or claim of the vendor; but upon the ripening of the equitable estate into a fee by a conveyance to the purchaser, the homestead claim would be superior to any claim to the land which accrued after the declaration of homestead was filed for record.

ID. — INURING OF SUBSEQUENT TITLE. — Whatever be the character of the title or interest in the land held at the time of the filing of the declaration, the claim will attach to that title or interest, and whatever may inure to or grow out of that title will be impressed with the lien equally with the original title.

ID. — TRANSFER OF EQUITABLE TITLE BY HUSBAND. — After a declaration of homestead has been filed by the wife upon land held as community property under an equitable title, the husband cannot, by any act in which she does not join, transfer the contract of sale by which the equitable estate was created, so as to defeat the homestead claim.

ID. — TRUST — NOTICE TO PURCHASER. — The husband, after the homestead claim has been filed by the wife, holds the contract of sale in trust for the community for the purpose of perfecting the title, and if he transfers it, or agrees to sell the dwelling-house and improvements to a purchaser with notice of the homestead claim, the purchaser takes it subject to the same trust, and if he obtains a conveyance under the contract of sale, will hold the legal title in trust for the owner of the homestead and subject to the homestead claim.

ID. — SUBJECTION OF HOMESTEAD TO UNPAID PURCHASE-MONEY. — Although the purchaser from the husband holds the land in trust for the husband and wife as owners of the homestead, yet it is subject in his hands to the amount of purchase-money unpaid by the husband to the original vendor, and until that amount has been satisfied, the wife cannot demand a conveyance from the purchaser.

ID. — NOTICE BY PURCHASER — DEFAULT OF HOMESTEAD CLAIMANT — REPUDIATION OF TITLE. — It is incumbent on such purchaser, in order to put the wife in default for non-payment of purchase-money due from the husband, to inform the wife of his relation to the property and of his right to receive the unpaid purchase-money; and if he merely demands posses-

sion of the premises without giving notice of a forfeiture for non-pay-
ment of purchase-money, and she repudiates his title, his failure to give
such notice takes from her repudiation of his claim all significance.

VENDOR AND PURCHASER — CONTRACT OF SALE — DEED — WAIVER OF FOR-
FEITURE. — The provision in a contract of sale for a forfeiture at the
maturing of the time fixed for payment is waived by the execution of a
deed under the contract.

ID. — CONSTRUCTION AGAINST FORFEITURE — DEMAND AND NOTICE. — A con-
dition involving a forfeiture must be strictly interpreted against the party
for whose benefit it was created; and when time is not of the essence of
a contract of sale, mere failure to make payment at maturity does not
*ipso facto* make the agreement void, and an option to avoid it and forfeit
the payment made must be expressed by proper notice after demand
and refusal to make the required payment.

APPEAL from a judgment of the Superior Court of
Stanislaus County.

The facts are stated in the opinion of the court.

*Wright & Hazen,* for Appellant.

This action is purely one of ejectment, and the legal
title must prevail. (Sedgwick and Wait on Trial of Title
to Land, sec. 485; *Cadiz* v. *Majors,* 33 Cal. 288.)  The
act of the defendant in filing his homestead did not
strengthen his title. (*Gilbert* v. *Sleeper,* 71 Cal. 290;
*Snodgrass* v. *Parks,* 79 Cal. 55; *Hayford* v. *Kocker,* 65
Cal. 389.)  Defendant being in possession under the
contract of purchase, and having made default in the
payments, repudiating the title and claims of the plain-
tiff, the plaintiff is clearly entitled to judgment. (*Hicks*
v. *Lovell,* 64 Cal. 14; 49 Am. Rep. 679; *Grey* v. *Tubbs,*
43 Cal. 359; *Wallace* v. *Maples,* 79 Cal. 433; *Central
Pac. R. R. Co.* v. *Mudd,* 59 Cal. 585; *Gates* v. *McLean,* 70
Cal. 49.)  Conceding that a homestead may be declared
upon land held under a contract of purchase, such dec-
laration does not give any new title, or strengthen the old.
The vendee may, in such case, abandon the contract, and
the vendor will be entitled to possession after such aban-
.donment. (*Snodgrass* v. *Parks,* 79 Cal. 55; *Pepper* v.
*Smith,* 54 Tex. 118; Platt on Property Rights of Married
Women, sec. 69; *Spencer* v. *Geissman,* 37 Cal. 96; *Brooks*
v. *Hyde,* 37 Cal. 373; *Calderwood* v. *Tevis,* 23 Cal. 335.)

*L. J. Maddux,* for Respondents.

The plaintiff was a *mala fide* purchaser, and being such, he took the legal estate with notice of all the rights of defendant Mary Jackson. (Wait on Notice, sec. 50; *Le Neve* v. *Le Neve,* 2 Lead. Cas. Eq. 109; 3 Wait's Actions and Defenses, 449; *Lunt* v. *Neely,* 67 Iowa, 97.) Respondent was in possession. Open and notorious possession of land is sufficient to put a subsequent purchaser upon inquiry as to the rights of the one in possession. (*Keys* v. *Test,* 33 Ill. 317; *Truesdale* v. *Ford,* 37 Ill. 210; *Reeves* v. *Ayers,* 38 Ill. 418; *De Wolf* v. *Pratt,* 42 Ill. 200.) So the possession of the husband and wife gives notice of all the equities of the wife in real estate. (*Iowa Loan & T. Co.* v. *King,* 58 Iowa, 598.) One holding the equitable title to land under a contract of purchase is the owner thereof within the meaning of the homestead law. (*Blue* v. *Blue,* 38 Ill. 9; 87 Am. Dec. 267; *Tomlin* v. *Hillyard,* 43 Ill. 300; 92 Am. Dec. 118.) Where a party has entered into the possession of premises under a contract of purchase, and made valuable improvements, exercising all the rights of ownership, such facts may be proven, and amount to a legal defense in an action of ejectment. (*Stow* v. *Russell,* 36 Ill. 18.) One purchasing the legal title, with notice and knowledge of the rights of another, takes subject to those rights, and the purchaser cannot recover. (*Blanchard* v. *Tyler,* 12 Mich. 339; 86 Am. Dec. 57; *Galland* v. *Jackman,* 26 Cal. 79; 85 Am. Dec. 172; *Montgomery* v. *Keppel,* 75 Cal. 129; 7 Am. St. Rep. 125; 2 Pomeroy's Eq. Jur., sec. 688; *Lipp* v. *South Omaha Land Syndicate,* 24 Neb. 692; *May* v. *Sturdivant,* 75 Iowa, 116; 9 Am. St. Rep. 463.) So a party who takes a conveyance with notice of a prior contract of sale is bound by it. (*Townsend* v. *Bissell,* 4 Hun, 297; *Crum* v. *Turner,* 7 Hun, 357.) The findings of the court show that the plaintiff was guilty of fraud, and he did commit a fraud upon the rights of Mary Jackson. (2 Pomeroy's Eq. Jur., sec. 591; *Le Neve* v. *Le Neve,* 2 Lead. Cas. Eq. 109.)

HARRISON, J. — The defendant W. A. Jackson, in the
year 1884, purchased from Charles Crocker the property
described in the complaint, for the sum of $150, paying
a portion of the price, and taking from him an agree-
ment for a conveyance upon the payment of the re-
mainder in two equal payments within six and twelve
months thereafter.  In September of that year Jackson
erected a dwelling-house and made other improvements
upon the land, at a cost of about thirteen hundred dol-
lars, and upon the completion of the house, the defend-
ants, with their children, moved into the house, and have
since occupied it as their home.  The money paid for
the purchase of the lots and the construction of the
dwelling-house was the community property of the de-
fendants, and on August 12, 1885, the defendant Mary
duly executed and acknowledged a proper declaration of
homestead upon said land and dwelling-house, and on the
same day filed it for record in the office of the county re-
corder of said county.  Jackson made a further payment
on account of his purchase from Crocker, in October,
1885, and took from him a new agreement providing for
the payment of the remainder in thirty days; and on
February 8, 1886, he paid a still further sum, and took an
agreement providing for the payment of the remainder
in thirty days from that date.  Each of these agreements
contained the following clause: " If paid as above stated,
with three dollars as cost of conveyance, the above-named
W. A. Jackson will be entitled to a deed for the above-
described lots; otherwise this agreement becomes null
and void, and the amounts now paid shall be forfeited.
If forfeited, the said W. A. Jackson shall thereafter be,
and he hereby consents to be, tenant of Charles Crocker,
liable to be dispossessed upon three days' notice."  At
the time the last agreement was given him, there was
unpaid upon the contract price of the lots the sum of
$47.21.  October 6, 1887, the plaintiff made an agreement
with the defendant W. A. Jackson for the purchase of
said dwelling-house and improvements for the sum of
fifteen hundred dollars, less such an amount as was to

be paid to Crocker upon the agreement for the conveyance of the land, and at the same time Jackson made the following indorsement upon the agreement of February 8, 1886, viz.: —

"I hereby surrender and relinquish all claims to receive a conveyance of the within property to W. H. Alexander, and authorize him to take and demand the conveyance therefor in his own name.

"Dated MODESTO, October 6, 1887.

"W. A. JACKSON";

and delivered the same so indorsed to the plaintiff, receiving from him one hundred dollars as part payment for the improvements. A few days thereafter the plaintiff presented the agreement, with the indorsement, to Crocker, and received from him a conveyance of the land, paying him the balance on said purchase price, amounting at that date to $40.21, and on the 28th of October placed the deed on record in the county recorder's office. On the 3d of November, 1887, the plaintiff paid to Jackson the further sum of $325, and executed to him his promissory note for $1,000, with a mortgage upon the property to secure its payment, thus completing the payment of the $1,500 under his agreement for the purchase of said improvements. Immediately after, he demanded possession of the land and premises from the defendants, which was refused, and in May, 1888, commenced this action in ejectment to recover possession thereof. The defendant Mary had no knowledge or notice of the plaintiff's right or title to the land and premises until November 6, 1887, and, at the time of his demand for the possession, repudiated any interest of his therein.

The defendant Mary has alone made answer to the complaint, and alleges therein her claim of homestead and the invalidity of her husband's assignment of the agreement to the plaintiff. It does not appear whether the defendant W. A. Jackson was ever served with the summons in the action or not, but the court found that he refuses to make answer to plaintiff's complaint, or to join with defendant Mary in making answer thereto.

The action was tried by the court without a jury, and judgment was rendered against plaintiff and in favor of the defendant Mary alone.  From this judgment, the plaintiff has appealed upon the judgment roll.

Upon the execution of the contract of sale by Crocker to Jackson on the 8th of February, 1886, the latter became vested with the equitable title to the land, and thereafter Crocker held the legal title to the land in trust for Jackson, to be conveyed to him upon the payment of the remainder of the purchase price.  The estate in the land thus conveyed was subject to be impressed with the lien of a homestead as fully as an estate in fee.  The declaration of homestead thereon was subordinate to the rights or claim of Crocker, but upon the ripening of the equitable estate into a fee by a conveyance to Jackson of the legal title, in accordance with the terms of the agreement, the homestead claim would attach to the fee and be superior to any claim to the land which accrued after the declaration of homestead was filed for record.  The Civil Code does not require a person who desires to make a declaration of homestead to have a fee in the land, or any particular title thereto.  "The homestead consists of the dwelling-house in which the claimant resides, and the land on which the same is situated, as in this title provided."  (Sec. 1237.)  "From and after the time the declaration is filed for record, the premises therein described constitute a homestead."  (Sec. 1265.) Whatever be the character of the title or interest in the land held at the time of the filing of the declaration, the claim will attach to such title or interest, and whatever may inure to or grow out of that title will be impressed with the lien equally with the original title.  (*Moore* v. *Reaves*, 15 Kan. 150; *Stinson* v. *Richardson*, 44 Iowa, 373; *McKee* v. *Wilcox*, 11 Mich. 359; 83 Am. Dec. 743; *McCabe* v. *Mazzuchelli*, 13 Wis. 478; Thompson on Homesteads, secs. 170–172.)

After the declaration of homestead had been filed by Mary, her husband could not, by any act in which she did not join, transfer the estate created by the contract

with Crocker, and upon which the homestead claim had been impressed. The instrument by which the estate was created was not itself the estate in the land, but the evidence by which that estate was manifested; and in accordance with whose terms such estate could be ripened into a fee. This instrument, being in the name of Jackson, was, after the declaration of homestead was filed, held by him in trust for the community for the purpose of perfecting the title to the land represented thereby, and without any right by his individual assignment thereof to alienate the estate which it represented. The statute has conferred upon the wife, as well as the husband, the right to create a homestead out of the community property, and when the wife has made the declaration, the husband is bound by its effect as fully as though the declaration had been made by himself. Although Jackson had the opportunity, by reason of the instrument being in his name, to make a transfer of the right to receive a conveyance from Crocker by mere indorsement upon the instrument, yet the effect of such transfer to the plaintiff, who took it with full knowledge of the circumstances under which Jackson had held it, and of the rights of defendant Mary in the land which it represented, was to render it, in the hands of the plaintiff, subject to the same trust as it was in the hands of Jackson, and make him a trustee thereof for the same purposes as was Jackson.

The court finds that at the time of the assignment to the plaintiff, and long prior thereto, the "plaintiff had full actual knowledge and notice of said declaration of homestead, and that defendant Mary claimed and occupied the premises as a homestead"; and that on the sixth day of October, 1887, the plaintiff made the agreement with Jackson for the purchase of the dwelling-house and improvements on the land, and that on that day Jackson made the transfer of the agreement hereinbefore set out; and that "the plaintiff never received any assignment or made any contract for the purpose of cheating said defendant Mary out of her homestead."

Assuming, then, as we must from these findings, that the transaction between Jackson and the plaintiff was in good faith towards the defendant Mary, and that the plaintiff received the transfer of the Crocker agreement with full knowledge that the land therein described was impressed with the homestead claim, and was charged with knowledge of the law that such homestead, or the means by which the title to the land was held, could not be alienated by Jackson alone, we must hold that the plaintiff became in equity merely the custodian of the right to obtain the deed, and that when he received the deed from Crocker, he held the legal title to the land thereby conveyed, in trust for the Jacksons according to their rights, and subject to the homestead claim of the defendant Mary.

The court does not find that the plaintiff ever made any purchase of the land from Jackson, but that they merely "made an agreement for the purchase and sale of said dwelling-house and improvements," and it appears from the findings that Jackson did not, by the terms of his assignment of the contract, attempt to transfer to the plaintiff any right to the land, the assignment itself being but the equivalent of an authority to the plaintiff to receive from Crocker in his own name the deed provided for therein. Viewing these transactions in the light of the circumstances under which they were had, and considering that they were had without any purpose to deprive the defendant Mary of her homestead, we can only say that the good faith under which the plaintiff then acted, as well as all principles of equity, will prevent him from saying now that he thereby acquired any estate in the land which he can hold adversely to her, or that his relation to her is other than that of a trustee of the estate so acquired by him.

The respondent Mary was not, however, by virtue of such relation, entitled to demand that the plaintiff should immediately make a conveyance to her of the land. Although he held the land in trust for the defendants, as above stated, still, it was subject in his hands to the same

superior claim for the unpaid amount of the purchase-money that it was in the hands of Crocker, and until that claim had been satisfied, Mary could not demand a conveyance from him. The plaintiff could not, however, assume a hostile relation to her until after she had herself renounced her obligation to discharge this claim.

The provision for a forfeiture at the maturity of the time fixed in the agreement for such payment had not been enforced by Crocker, and his subsequent execution of the deed to plaintiff was a recognition by him that such forfeiture had been waived. If it should be conceded that that provision was not extinguished by his failure to avail himself of it at the time it accrued, yet it could not afterwards be enforced without a demand for payment on his part and a refusal on the part of Jackson. (*Armstrong* v. *Pierson*, 5 Iowa, 317.) "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created." (Civ. Code, sec. 1442.) When time is not made of the essence of the contract, it is incumbent upon the party who would terminate the contract to give notice to the other, and a reasonable time within which to do any act required on his part, before he can be absolved therefrom. By the terms of the agreement with Jackson, Crocker had a right, in case of non-payment, to declare the agreement null and void and the previous payment forfeited. Mere failure to make the payment did not *ipso facto* make the agreement void, except at the option of Crocker, and such option must have been expressed by proper notice to Jackson. The plaintiff could not enforce this claim assigned to him by Crocker upon any other terms than could Crocker, and his failure to make a demand for the payment left the agreement still in force.

The plaintiff obtained the deed from Crocker, October 15th, and "immediately after November 3d," that is, as early as November 4th, made a demand upon the defendants for the possession of the premises. No demand was made by him for the purchase price, nor did he give any notice that he elected to treat the agreement at an end.

Considering the relation which he bore to the defendants in respect to the title to the land held by him for them, he was not, at the time of his demand for the possession, or at the commencement of this action, entitled thereto. The fact that when he made such demand the defendant Mary repudiated his title is immaterial. She did not, until the 6th of November, have any knowledge that he had any interest in the premises, or was entitled to receive the unpaid portion of the purchase-money, and after she had such knowledge, no demand was made upon her. It was incumbent on him, in order to put her in default, to inform her of his relation to the property, and his failure to do so took from her repudiation of his claim all significance.

At the trial of the cause, the equitable defense presented in the answer was considered by the court, and many transactions between the plaintiff and the defendants not presented by the answer were incorporated by it into its findings. It is evident that the parties presented to the court their respective rights to the premises without much regard to the form of the pleadings, and that the judgment of the court was based more upon the facts disclosed at the trial, than upon the issues presented for trial. In its judgment, the court directs that the defendant Mary pay to the plaintiff the balance of the purchase price on the lots in question, but makes no direction to the plaintiff respecting a conveyance thereof. There is no averment in her answer of any offer by her to pay to the plaintiff this amount of money, and the plaintiff commenced his action without making any demand therefor. Unless the judgment should direct a conveyance from the plaintiff, upon the payment of the money for which he holds the title as security, the payment by Mary would still leave the question of title to the premises unsettled.

Considering the entire case as presented by the record, we are of the opinion that complete justice can be best administered to all parties by reversing the judgment and directing a new trial, with leave to the parties to

amend their pleadings as they may be advised, and it is so ordered.

DE HAVEN, J., McFARLAND, J., BEATTY, C. J., GA-ROUTTE, J., and SHARPSTEIN, J., concurred.

PATERSON, J., dissenting. — By the conveyance from Crocker, the plaintiff became vested with the legal title, and the right, as grantee of Crocker, to enforce the contract made between Crocker and Jackson. After the conveyance he stood in the same position Crocker would have held if no conveyance had been made. (*Dwight* v. *Phillips*, 48 Barb. 118; Civ. Code, secs. 1083, 1084.) Crocker could not have declared a forfeiture without giving defendants an opportunity to pay the balance, and thus avoid the forfeiture provided for in the agreement. He never had claimed a forfeiture by reason of a failure to make payments at the times required by the contract, and a court of equity ought not to allow a forfeiture without a reasonable notice to defendants that a forfeiture would be declared unless payment was made.

Plaintiff paid Crocker and received his deed on October 15, 1887. On November 3, 1887, plaintiff paid Jackson $335.20, gave him his promissory notes for $1,000, secured by mortgage on the premises, and on the following day he demanded possession of the land; but defendants refused, and ever since have refused, to deliver the same, and no offer has ever been made by defendants, or either of them, to pay plaintiff the balance of the purchase price. In this I think Mrs. Jackson made a mistake. If Crocker had made a demand for possession of the premises, it would have been the clearest kind of a notice that he claimed a forfeiture on account of a failure to pay the balance of the purchase price. It then would have been the duty of the defendants, if they desired to avoid the forfeiture, to immediately, or as soon as they could do so, tender the amount remaining unpaid. The same duty was owing to plaintiff, the grantee

of Crocker. His demand was a proper one to make, and was unmistakable proof of his claim of forfeiture, and the right to possession under the terms of the contract. (Pomeroy on Specific Performance, sec. 393; *Doe* v. *Birch,* 1 Mees. & W. 402; *Dendy* v. *Nicholl,* 4 Com. B., N. S., 376.) Instead of offering to pay the balance due, as she ought to have done, Mrs. Jackson, the court finds, "repudiated any right, title, or interest of plaintiff in or to said premises, and threatened him with violence if he attempted to take or have possession thereof, and said defendant ever since has denied, and now does deny and repudiate, any right, title, interest, or claim of plaintiff in or to said premises, or any part thereof."

Under the contract, payment of the purchase price was a condition precedent. The parties intended — and their intention is expressed in clear language — that the fee should not pass until the purchase-money was fully paid. Before defendant Mary can claim a deed or the right to retain the possession given under the contract, she must pay the purchase price. She cannot claim under the contract, and at the same time repudiate it. The legal title is in plaintiff. He paid a valuable consideration for it, and if the defendants, or either of them, have any defense to his claim for the possession, it must be an equitable defense. One who asks the interposition of a court of equity between himself and the owner of the legal title must show that he is not in fault. That he who seeks equity must do equity, and do it promptly, is a rule especially applicable to contracts of this kind, and particularly in this state. (*Green* v. *Covillaud,* 10 Cal. 324; 70 Am. Dec. 725.) Defendant Mary had notice of plaintiff's claim as early at least as November 4, 1887, and had full notice of his rights two days later. This action was not commenced until May 8, 1888. The court finds that each of the defendants was at all times able to pay the balance of the purchase price. Neither of them offered to do so. Six months had passed before plaintiff commenced this action. In view of the fact that no tender of the balance had been made up to that time, it is

not likely that a court of equity, after such delay without excuse, would have relieved the defendant Mary from the forfeiture that had been incurred, even if she had offered, in her answer, to pay the balance and all costs that had been incurred by the plaintiff; but not only was no such offer made, but she still repudiates the claim of the plaintiff, and, so far as the record shows, still denies that he has any interest in the property, or that the defendants owe him any duty. To entitle a party who is in default, under such circumstances, to relief, it must appear that he has promptly and in good faith offered to do what his contract required him to do, and neither infancy nor ignorance of his rights is a sufficient excuse. (Pomeroy's Eq. Jur., sec. 452; *Conrad* v. *Lindley,* 2 Cal. 175; *Steele* v. *Branch,* 40 Cal. 11; *Grey* v. *Tubbs,* 43 Cal. 364; *Hicks* v. *Lovell,* 64 Cal. 18, 20; 49 Am. Rep. 679; *Marshall* v. *Means,* 12 Ga. 68; 56 Am. Dec. 444; *Cross* v. *Carson,* 8 Blackf. 138; 44 Am. Dec. 742; *McClartey* v. *Gokey,* 31 Iowa, 509; *Jones* v. *Robbins,* 29 Me. 353; 50 Am. Dec. 593; *Wells* v. *Smith,* 2 Edw. Ch. 83; *Hancock* v. *Carlton,* 6 Gray, 58, 59.)

The indulgence or non-action of the plaintiff from the time he demanded possession until the commencement of this action cannot be taken as a waiver of the forfeiture. (*Kerns* v. *McKean,* 65 Cal. 416.) "The vendor is not bound to wait indefinitely after the failure of the purchaser to comply with the terms of his agreement. If the payments are not made when due, he may, if out of possession, bring his ejectment, and recover possession." (*Central Pac. R. R. Co.* v. *Mudd,* 59 Cal. 590.)

The court below, recognizing the rule that "he who asks equity must do equity," saw that it would be inequitable to allow the defendant to retain the possession of the land without paying to plaintiff the balance of the purchase price. It was adjudged and decreed, therefore, "that defendant Mary Jackson pay to plaintiff the sum of $47.21, balance of purchase price paid on the lots involved, with interest on the same at seven per cent per annum from date hereof." In this I think the court

erred.  There is no power in a court of equity to grant relief on a ground not claimed, and on which one of the parties has not had an opportunity to be heard.  The question whether defendant Mary should be relieved from the forfeiture was not in issue, and the court could not consider it.  (*People's Bank* v. *Mitchell,* 73 N. Y. 415.) Even where evidence was given of an offer to pay the full amount due after the action was commenced, this court held that it was new matter which ought to have been pleaded.  (*Hegler* v. *Eddy,* 53 Cal. 599.)  In the case at bar, defendant Mary has never offered to pay the plaintiff anything, but has at all times denied that he had any interest in or right to the property, and has asserted that he conspired with her husband to cheat and defraud her out of her homestead right.  Judicial amnesty of one who has, without just cause, expressed such repudiation, charges, and defiance continuously down to the date of the decision, it seems to me, would be mutilated equity. There is no precedent for relief from forfeiture under such circumstances.

As additional evidence of the injustice of allowing the defendants, after such conduct, to tender to plaintiff the balance of the purchase price, and require him to convey the legal title to them, it appears from the record that the plaintiff paid the full value of the property to Jackson, and that the latter and his wife have ever since remained in possession of the property.  The record does not show affirmatively that the defendant Mary has had the benefit of the money paid by plaintiff to her husband; but, as the money paid was community funds, and they have always lived together, it must be presumed that they enjoyed it jointly.