[18 06. Department Two. — June 7, 1893.]

## GEORGE C. GAYLORD, ASSIGNEE, ETC., RESPONDENT, *v.* HENRY M. PLACE ET UX., APPELLANTS.

HOMESTEAD — MINERAL LAND — PLACER MINING CLAIM — RESIDENCE — SUBORDINATE USE FOR AGRICULTURE. — Mineral land of the United States located and chiefly used by the owner as a placer mining claim, but also used as a place of residence for himself and family, and to some extent for pasturing stock and raising vegetables, is subject to selection as a homestead.

ID. — HOMESTEAD RIGHT NOT DEPENDENT ON TITLE. — A homestead right does not depend upon the character of the title held, or which may be acquired by the party claiming it; but it is impressed on the land to the extent of the interest of the claimant in it, who has actual and rightful possession of the premises at the time of selection, and not on the title merely, which, as between the claimant and his creditors, is a false quantity, to be excluded from consideration.

ID. — PERMANENT HOME NOT ESSENTIAL TO HOMESTEAD CLAIM — WORKING OF PLACER MINE. — It is not necessary that a homestead should be and remain a permanent home; and the fact that the homestead claimants intend to and are working a placer mine upon the premises, in working of which the land is being washed away, does not affect their right to select the land as a homestead, so long as they choose to make it their home.

ID. — EXEMPTION FROM EXECUTION — MINER'S CABIN AND CLAIM — SELECTION OF HOMESTEAD NOT INCONSISTENT. — Subdivision 5 of section 690 of the Code of Civil Procedure, exempting from execution "the cabin or dwelling of a miner," and "also his mining claim actually worked by him, not exceeding in value the sum of one thousand dollars," is not inconsistent with sections 1237 and 1265 of the Civil Code, providing that the selection of a homestead consists of the dwell-

ing-house in which the claimant resides and the land on which the same is situated, and does not preclude a miner from selecting the cabin or dwelling and claim as a homestead when of greater value than the statutory exemption.

ID. — HOMESTEAD LAW — LIBERAL CONSTRUCTION. — A homestead is for the benefit and protection of the family, and the law providing for its selection should be liberally construed so as to effectuate the beneficent ends contemplated by it.

ID. — SETTING ASIDE HOMESTEAD TO INSOLVENT DEBTOR — EX PARTE ORDER. — Under section 1465 of the Code of Civil Procedure, providing for the setting aside of a homestead to an insolvent, an order setting apart a homestead is valid, although made *ex parte* and without notice to the creditors of the insolvent.

APPEAL from a judgment of the Superior Court of Nevada County.

The facts are stated in the opinion.

*A. Burrows,* for Appellants.

The use of the premises for mining was not inconsistent with the right of homestead, and did not prevent the filing of a homestead thereon. (See *Clark* v. *Shannon,* 1 Nev. 568; *Heathman* v. *Holmes,* 94 Cal. 291; Thompson on Homesteads, sec. 7; *Layson* v. *Grange,* 48 Kan. 440; *Gregg* v. *Bostwick,* 33 Cal. 220; 91 Am. Dec. 637; *Gree'y* v. *Scott,* 2 Woods, 257; *Ornbaum* v. *Creditors,* 61 Cal. 455; *Morrissey* v. *Donahue,* 32 Kan. 646.) Homestead statutes should be liberally construed. (*Heathman* v. *Holmes,* 94 Cal. 291.) Such construction should be given as will advance the object contemplated by the act intended to provide a shelter for the family in misfortune. (*Deere* v. *Chapman,* 25 Ill. 612; 79 Am. Dec. 350.) The insolvency court had jurisdiction to set aside the homestead upon an *ex parte* application, without notice to the creditors. (*Kearney* v. *Kearney,* 72 Cal. 591.) The proper remedy in such a case was by an appeal from the order setting it aside. (*In re Baldwin,* 71 Cal. 74; *Crim* v. *Kessing,* 89 Cal. 486; *Peterson* v. *Weissbein,* 80 Cal. 39; *Wolverton* v. *Baker,* 86 Cal. 591; *Estate of Stevens,* 83 Cal. 322; 17 Am. St. Rep. 252; Insolvent Act, sec. 677.) The setting apart of the homestead was obligatory upon the court. (*Demartin* v. *Demartin,* 85 Cal. 75.) The fact that the source of title to the land in question was the United States is immaterial, as title cuts no figure under the homestead law. (*King* v. *Gotz,* 70 Cal. 236.)

*P. F. Simonds,* for Respondent.

 By the laws of the United States, the mining claim and premises in dispute were clearly not the subject of pre-emption or homestead. (U. S. Rev. Stats., secs. 2258, 2289, 2318; *Doran* v. *Central Pacific R. R. Co.*, 24 Cal. 257.) The principal use to which property is put is the test in determining whether it is subject to homestead. (*In re Allen*, 78 Cal. 293.) The exemption as to miners is inconsistent with the right to a homestead. (Code Civ. Proc., sec. 690, subd. 8.) As the court found that the order was made *ex parte*, without notice of any kind, and inadvertently and improvidently, it had undoubted power to set aside such order, upon its own motion or otherwise. (Code Civ. Proc., sec. 128, subd. 8; *Hall* v. *Polack*, 42 Cal. 218; *Wiggin* v. *Superior Court*, 68 Cal. 398; *Baker* v. *Insurance Co.*, 73 Cal. 182.)

BELCHER, C. — On September 24, 1891, the defendants were husband and wife and were residing on a tract of land in Nevada County. On that day the husband, Henry M. Place, executed in proper form and caused to be recorded a declaration of homestead on the said land, in which he stated that he estimated the actual cash value of the property to be fifteen hundred dollars.

On October 10, 1891, Place filed in the superior court of Nevada County his petition in insolvency, properly verified and stating the necessary facts, and having annexed thereto the schedule and inventory required in such cases; and thereupon an order was made by the court adjudging the petitioner to be an insolvent debtor, and fixing November 16, 1891, as the time for the creditors of the debtor to meet and prove their debts and choose an assignee of his estate. A copy of this order was duly published and served by mail on all the creditors named in the schedule.

On October 26, 1891, the insolvent presented to the court and filed his petition, asking that the premises described in his declaration of homestead be set apart for his use and benefit as a homestead, and thereupon the court, on the same day and without any notice being given to creditors, made and entered an order as prayed for.

On the day appointed for that purpose the creditors met and

elected the plaintiff assignee of the insolvent's estate, and within five days thereafter he duly qualified and entered upon the discharge of his duties as such; and the clerk of the court then by an instrument, under his hand and seal of the court, assigned and conveyed to him all the estate, real and personal, of the debtor, not exempt by law from execution.

On January 5, 1892, the plaintiff commenced this action, alleging, among other things, in substance, that the prem'ses set apart as a homestead to the defendant, Henry M. Place, were at the time his declaration of homestead was filed thereon public mineral lands of the United States, which had been located by him as a placer mining claim, and had been used solely for mining purposes; that the said premises were of a value of not less than three thousand dollars, and that no portion thereof was, or ever had been, exempt by law from execution, or from the operation of proceedings in insolvency, or subject to be selected or set apart as a homestead; that by virtue of the election and appointment of plaintiff as assignee, and the assignment and conveyance made to him as such assignee, he became and then was the sole and exclusive owner, and entitled to the possession of all of said premises; and the prayer was that it be adjudged and decreed that the said premises were not impressed with a homestead character; that plaintiff, as assignee of the estate of the insolvent, was the sole and exclusive owner thereof; and that neither of the defendants had any interest in or right of possession to any portion thereof.

The answer of defendants denied that the premises described in the complaint were valuable solely for placer mining purposes, or had been solely used by them as a mining claim; denied that no portion of the said premises was or had ever been exempt by law from execution, or not subject to be selected or set aside as a homestead; denied that the plaintiff, as assignee, ever became or was the sole or exclusive owner or entitled to the possession of that part of said premises described in the declaration of homestead set forth; and also denied that the claim of defendants or either of them was without right. It then alleged that defendants were husband and wife, and that for many years prior to September 24, 1891, they actually resided upon and used the land described in the declaration of

homestead, with the dwelling-house thereon, as their permanent home; that up to the said date the said premises were largely used by the husband for the purpose of earning a living by the process of hydraulic mining, but that the said operations were so impeded by injunctions and other legal process as to prevent him from properly working the ground, and that at the time the declaration of homestead was recorded the premises were of little value for any purpose, but remained the permanent residence and home of the defendants. It then sets forth the declaration of homestead and the filing thereof, the proceedings in insolvency, and the order of the court setting apart the homestead as before stated, and alleges that the said order was duly given and made and is still in full force and effect, and that the court had jurisdiction to make it; that the plaintiff and those whom he represents were parties defendant to the insolvency proceedings, and that plaintiff is estopped from questioning the validity of the order so setting apart the homestead, and that defendants plead the same as a bar to the suit.

The case was tried, and the court found, among other things, that the premises in controversy were public mineral land of the United States, held by the defendant, Henry M. Place, by virtue of locations thereof as placer mining claims, and that they were chiefly valuable as a mining claim, and had been used by defendants as their sole means of support, chiefly by carrying on the business of gold mining thereon; "that on the twenty-fourth day of September, 1891, and for many years prior thereto, the defendants, Henry M. Place and his wife, actually resided upon and occupied the dwelling-house and premises described in the declaration of homestead, occupying and using the same as their home and residence. . . . . but said occupation was for the carrying on mining on said premises and the land adjoining, the use of the homestead premises for grazing or agriculture being secondary and merely incidental to the said occupation of mining; that said defendants had no other home or residence save the one described in their homestead declaration; that on and up to the time when the declaration of homestead was filed, all the premises described therein were used by the defendants for the additional purpose of grazing their horses and cattle, and a small portion thereof for a vegetable garden";

that the order setting apart the premises as a homestead "was still in full force and effect at the date of the commencement of and at the date of the trial of this action, and that in making said order this court had jurisdiction so to do, and that the plaintiff and those whom he now represents were parties defendant to said insolvency proceedings, but that said order was made *ex parte* and without notice of any kind, and inadvertently and improvidently made by said court, and that said plaintiff is not estopped by the said order from questioning its validity"; that the premises embraced in the said declaration of homestead are of a value of not less than three thousand dollars, and that no portion thereof is, or ever, at any time, has been, exempt from execution, or subject to be selected or set apart as a homestead, and that the plaintiff by virtue of his election, appointment, and qualification as assignee, and the conveyance made to him by the clerk of the court, "became and is the sole owner of all the premises" described in his complaint; that the defendants each claim some interest in the premises and property described, and refuse to deliver possession thereof to the plaintiff, but that their "said claim and refusal are wholly without right, and a cloud upon plaintiff's title thereto and right of possession thereof, as such assignee."

Judgment was accordingly entered that the plaintiff, as assignee, was the true and lawful owner of all the premises and property described in his complaint, and that all adverse claims of the defendants thereto were invalid and groundless, and that they and each of them be perpetually estopped from setting up any claim to the said premises. From this judgment the defendants have appealed on the judgment-roll.

The conclusion reached by the court below was evidently based upon the theory that mineral land of the United States, which had been located and chiefly used as a placer mining claim, could not be selected as a homestead, though it was also used by the owner as a place of residence for himself and family, and to some extent for pasturing stock and raising vegetables, and therefore that the proceedings taken by the defendants to select the premises in controversy were wholly ineffectual to impress upon them the character of homestead. If this theory is correct, the judgment should be affirmed, and if not, it should be reversed.

The statute provides that the homestead consists of the dwelling-house in which the claimant resides and the land on which the same is situated, selected as in the Civil Code provided, and that from and after the time the declaration is filed for record, the premises therein described constitute a homestead. (Civ. Code, secs. 1237, 1265.) The homestead right does not depend upon the character of the title held by the party claiming it. It is impressed on the land to the extent of the interest of the claimant in it—not on the title merely. "The actual homestead, as against everybody who has not a better title, becomes impressed with the legal homestead right by taking the proceedings prescribed by the statute." (*Spencer* v. *Geissman*, 37 Cal. 99.) "In the solution of all questions arising between homestead claimants and those claiming under or against them as creditors, the absence of title is a false quantity, which must be excluded from consideration." (*Brooks* v. *Hyde*, 37 Cal. 373.)

A homestead in the country may include a farm, whether it contains a hundred or a thousand acres, and whether it is used for the ordinary purposes of farming or for grazing and raising stock. The only tests are use and value. Its value must not exceed five thousand dollars, and its use must be primarily as a home for the family. "Whatever is used — being either necessary or convenient — as a place of residence for the family, as contradistinguished from a place of business, constitutes the homestead, subject to the statutory limit as to value. If, however, it is also used as a place of business by the family, which frequently happens, it may not therefore cease to be a homestead, if it would be necessary or convenient for family use independent of the business." (*Gregg* v. *Bostwick*, 33 Cal. 220; 91 Am. Dec. 637; *Ornbaum* v. *Creditors*, 61 Cal. 455.)

It is claimed, however, for respondent that mineral lands of the United States are expressly reserved by statute from entry and sale, except as mining claims, and, therefore, as the title to such lands cannot be acquired by pre-emption or homestead entry, they should be held not subject to selection under our homestead laws. But, if title to the land selected, as between the homestead claimant and his creditors, is a false quantity, which must be excluded from consideration, how can it be

material in what way or under what statute title in fee to the premises might be acquired? It is enough that the claimant has actual and rightful possession of the premises at the time of his selection, and the courts will go no further in investigating his title.

It is also claimed that a homestead is intended to make a permanent home for the claimants, and that a placer mining claim is taken up for the purpose of washing it away, and thus within some limited time destroying the home, if located upon it, and that this must necessarily preclude the right to select the claim as a homestead; but it is not necessary that a homestead should be and remain a *permanent* home. It may be sold or abandoned by the claimants at any time. It only remains their home so long as they choose to make it so. We fail to see, therefore, how the right to select a particular parcel of land for a homestead can in any way be affected by the fact that the claimants intend to and do make a living by washing out gold from the ground, rather than by raising grain, hay, or fruit thereon.

It is further claimed that the statute exempts from execution "the cabin or dwelling of a miner, not exceeding in value the sum of five hundred dollars, . . . . and also his mining claim actually worked by him, not exceeding in value the sum of one thousand dollars" (Code Civ. Proc., sec. 690, subd. 5); and that this exemption is inconsistent with, and must preclude, the right to select the cabin or dwelling and claim as a homestead, and thus have them exempt under another statute.

We see no inconsistency in the two supposed rights, and nothing in the statutes or policy of the law precluding the miner from claiming exemption under either of the statutory provisions referred to. The homestead is for the benefit and protection of the family, and the law providing for its selection should be liberally construed so as to effectuate the beneficent ends contemplated by it. (*Heathman* v. *Holmes*, 94 Cal. 291.) The exemption of the claim, under section 690 of the code, *supra*, does not depend upon residence thereon, but its selection as a homestead does. The dwelling may be of a value greater than five hundred dollars, and the claim of a value greater than one thousand dollars, and when they are properly selected and

filed upon as a homestead, we think they should be protected as such.

The court found that the order setting apart the homestead in the insolvency proceedings "was made *ex parte* and without notice of any kind, and inadvertently and improvidently." Section 60 of the Insolvent Act provides that "It shall be the duty of the court having jurisdiction of the proceedings to exempt and set apart for the use and benefit of said insolvent such real and personal property as is by law exempt from execution, and also a homestead in the manner as provided in section 1465 of the Code of Civil Procedure." In *Kearney* v. *Kearney,* 72 Cal. 591, it was held that under section 1465 of the Code of Civil Procedure, an order or decree setting apart a homestead was valid, although no notice of the application was given to the heirs. The order setting apart the homestead involved in this case was therefore not invalid, because made *ex parte* and without notice; nor is there anything tending to show that the order was made inadvertently or improvidently, except the facts on which the court based its conclusion that the property set apart did not and could not constitute a homestead. But as we have seen, that conclusion was not justified by the facts and law of the case, and cannot, therefore, be sustained.

Under the findings — and they cover all the issues in the case — we think the defendants were entitled to judgment. We advise, therefore, that the judgment be reversed, and the cause remanded, with directions to the court below to enter judgment in favor of the defendants.

HAYNES, C., and VANCLIEF, C., concurred.

For the reasons given in the foregoing opinion, the judgment is reversed, and the cause remanded, with directions to the court to enter judgment in favor of the defendants.

McFARLAND, J., FITZGERALD, J., DE HAVEN, J.