## In re WILSON.

(District Court, D. Maryland. December 23, 1920.)

No. 3275.

1. **Bankruptcy ⬀415(3)—Court has discretion to determine dischargeability of only substantial debt.**

   In determining the right of the bankrupt to a discharge, the court has discretion to determine whether the only substantial debt scheduled by the bankrupt is one which would be barred by the discharge.

2. **Bankruptcy ⬀424—Injury caused by illegally driving automobile is not willful and malicious.**

   A judgment for personal injuries caused by illegally driving an automobile while intoxicated is not one for willful and malicious injury to the person, since it does not involve the intent to cause the injury, so that such judgment is barred by a discharge in bankruptcy.

3. **Bankruptcy ⬀408(1)—Bankrupt's testimony held not willfully and knowingly false.**

   Bankrupt's testimony that he did not have a bank account at time of petition, that he was not his father's partner, and that he had never had a bank account, was not willfully and knowingly false, so as to bar his discharge, where he had never had such account in his own name, though there had been an account in the joint names of himself and his father and mother and he had testified in a previous action that he had paid for an automobile with his own money, which he took from the bank for that purpose.

In Bankruptcy. In the matter of William Griffith Wilson, bankrupt. On specifications in opposition to discharge in bankruptcy. Discharge granted.

Seth, Shehan & Marshall, of Easton, Md., for objecting creditors.
N. E. Clark, of Easton, Md., and Addison E. Mullikin, of Baltimore, Md., for bankrupt.

ROSE, District Judge. On a Sunday afternoon towards the close of July, 1918, the bankrupt, in his Ford car, ran into another automobile on the Peach Blossom road, near Easton, in Talbot county, in this state. A Miss Lednum, a passenger in the other machine, was severely and permanently injured. She brought suit in the circuit court for Talbot county against the bankrupt and his father, apparently upon the theory or hope that the machine belonged to a partnership, consisting of the bankrupt and his father, and was being used at the time in the business of the firm. The declaration counted on negligence, violation of traffic laws, excessive speed, etc.

In the course of the trial the bankrupt testified that the machine was his own, that it did not belong to his father, and that it was paid for in part to the amount of nearly $400 with his own money, which he had taken out of bank for that purpose. The case against the father was dismissed. The facts were such as led the court to grant the plaintiff's prayer that the jury would be entitled to award punitive damages against the bankrupt, and they returned a verdict against him for $4,750, upon which judgment was duly entered.

The money which the bankrupt used in the purchase of the machine which did the harm was withdrawn by him personally from an account in the Workmen's Permanent Building & Loan Association, which has a savings department and acts as a savings bank. That account had been opened on July 2, 1915, in the name of the bankrupt, William Griffith Wilson, his mother, Fannie R. Wilson, and his father, George M. Wilson, in trust for all, and subject to the order of either (sic) the balance at death of either (sic) to belong to the survivor.

The account was opened by a deposit of $665, the ownership of which the testimony leaves in doubt. The father says it was his, and so at times apparently does the son; but the son testifies that before that time he had been giving his father money to keep for him. He subsequently deposited small amounts in the account, and his father says he would sometimes give him small sums to deposit for the elder's account. The withdrawals, prior to the accident, except $381.50, used in the purchase of the automobile in question, were in small amounts, and apparently were all made by the bankrupt for his own purposes.

Some 10 days after the accident the father went to the bank and closed the account by the withdrawal of the balance, then amounting to $922, which he deposited in another banking institution in his own name. About the time the verdict was rendered, the bankrupt gave a mortgage on the automobile for $500 to his counsel to secure their fee. The father, very shortly thereafter, purchased the mortgage, apparently for its face value, from the lawyers, and then the son filed his petition in bankruptcy, scheduling as his only asset the automobile, worth, he said, about $200, and subject to the mortgage for $500.

[1] Some of the evidence given during the trial of the damage case has been reproduced in these proceedings. It indicates that the accident was the result of the bankrupt's driving his car while intoxicated. At the hearing, and in one of the briefs of the bankrupt, it was suggested that the nondischargeability of a debt, even if it were the only substantial one scheduled, was no ground for withholding a general discharge. That, it was said, should be granted, and the question of whether it had the effect of extinguishing a particular debt should be determined in whatever proceedings might subsequently be had to enforce payment. On second thought, however, the bankrupt united with the creditor in asking that the question of dischargeability should be here determined, as in the discretion of the court, it may be. In re Colaluca (D. C.) 133 Fed. 255.

[2] Is the judgment in question a liability for a willful and malicious injury? The creditor, relying on Ex parte Cote (Vt.) 44 Am. Bankr. R. 43, 106 Atl. 519, in which the facts are very similar, asserts that it is. There the Supreme Court of Vermont, with great ability, argues that any damage resulting from the intentional violation of law is willful and malicious, within the meaning of the act, whether the intent to cause the injury, or any injury, existed or not. I find it difficult, however, to resist the conclusion that Congress

,wished to draw a hard and fast line between cases in which the bankrupt intended to do harm and those in which no such intention existed. Such would seem to be the opinion of the Supreme Court, for after an elaborate review of the reasons why, in its view, a liability for criminal conversation with the wife of the creditor was a willful and malicious injury to his person and property, it said:

"One who negligently drives through a crowded thoroughfare, and negligently runs over an individual, would not, as we suppose, be within the exception." Tinker v. Colwell, 193 U. S. 489, 24 Sup. Ct. 505, 48 L. Ed. 754.

That such reckless driving might often be a violation of a state statute or a municipal ordinance could scarcely have been overlooked by the court, but there is no suggestion that, if it was, the rule would be different. The first specification must therefore be overruled.

[3] A like fate must attend the second and third. Until the accident, father, mother, and son doubtless felt that the bank account belonged to the last named, and, had it not happened, they would doubtless feel so still. That the father never relaxed some measure of control over it is typical of his masterly way of dealing with those dependent upon him. If the money had been his son's, he then thought himself entitled to take it away, and in that view both mother and son acquiesced without cavil or question. A finding at the time of the filing of the bankruptcy petition that the bankrupt thought that the money was his would not be justified.

Nor does the evidence enable me to agree with the referee in sustaining the fifth specification. I cannot believe that he was his father's partner. When the father's father was alive, the firm name was William H. Wilson & Son. After the grandfather died, the bankrupt's father changed the firm sign and its stationery by substituting his Christian names for those of the deceased, but left the "& Son" as it had been. The bankrupt was then a small boy, and it was not reasonable to suppose that any one would have seriously thought of then admitting him to the firm. The incident of the issuance, some four years ago, of a trader's license to both father and son, is sufficiently explained.

The fourth specification raises a closer question. The bankrupt, when examined before the referee, swore that he never had a bank account. He never had, in a sense that there ever was one in his own name, and in that alone. Nevertheless his testimony in this respect was far from candid. The objecting creditor stresses the fact that, in testifying in the damage case in the Talbot county court, the bankrupt had said that the automobile was his, paid for with his money, which he had taken out of bank for the purpose; but it would scarcely, however, be safe to hold that, upon all the facts, he can be found to have made willfully and knowingly a false oath.

It follows that the discharge must be granted. I am frankly sorry that it is so. The bankrupt, by his recklessness, has caused the objecting creditor injuries which she will carry to her grave. He has come into this court for no other purpose than to make sure that she will never get a cent of his money, and yet, if he outlives his father, he

will, in all probability, be a well-to-do man. In this particular case, the result is to be regretted; but no other can be reached in accordance with well-settled principles, the application of which, in the overwhelming majority of cases, is at once necessary and salutary.