## PANAGOPULOS v. MANNING et ux.

No. 5815. Decided June 23, 1937. (69 P. [2d] 614.)

Rehearing Denied October 13, 1937.

W. *Finch Dawson* and *George W. Latimer,* both of Salt Lake City, for appellant.

*David J. Wilson,* of Ogden, for respondents.

LARSON, Justice.

This is an appeal from a judgment of the district court of Weber county. In October, 1904, the father and mother of defendant Clarence Manning conveyed by deed to Clarence Manning approximately 20 acres of land in Weber county, reserving unto the grantors and each of them a life estate in the property. Since the execution of such deed, neither of the grantors has been in possession of, nor lived upon, said premises, but the grantee, Clarence Manning, and his family have lived upon the land under a verbal lease from year to year between the life tenants and the grantee of the legal title, under the terms of which the defendants (grantees) held exclusive possession and actual occupancy. Prior to 1931, John Manning, one of the life tenants, died. On March 30, 1931, defendant Clarence Manning, while driving an automobile, struck and killed Ray Anderson, a minor son of plaintiff. The following day, Clarence Manning, for the purpose and with the intention of preventing creditors—particularly plaintiff—from obtaining said property, conveyed the same without other consideration to his wife, the defendant Jennie A. Manning. On January 20, 1932, plaintiff herein recovered a judgment against defendant Clarence

Manning in the sum of $4,631 for the death of said Ray Anderson, and within four months thereafter, defendant Clarence Manning filed in the United States District Court his schedules in bankruptcy, listing among his liabilities the judgment of plaintiff herein, recovered for the death of her minor son, Ray Anderson, and was adjudicated a bankrupt. Manning did not list among his assets the property above referred to and involved in this action. At the first meeting of creditors of the bankrupt, plaintiff appeared by counsel and proved her claim; a trustee in bankruptcy was named, who made application for leave to bring an action to recover to the bankrupt estate the land involved in this action. On hearing before the referee, where plaintiff and defendant, Clarence Manning, both appeared by counsel, the referee set aside the property as exempt to the family of the bankrupt. On application for discharge of the bankrupt, plaintiff, before the court, resisted such discharge upon the grounds that the bankrupt had made false statements in not listing this property among his assets, and had fraudulently transferred it to his wife to defraud his creditors. The United States District Court overruled these objections and entered an order of discharge of the bankrupt on October 24, 1933. Under date of October 10, 1933, Elizabeth Manning, the sole surviving life tenant, quit-claimed to defendant, Jennie Manning, all her interest in the property in controversy. This property was all the real estate owned by defendants, and was of a value less than the statutory exemptions allowable to the Mannings.

This action was instituted to set aside the deed from defendant Clarence Manning to his wife, the defendant Jennie Manning, as fraudulent, and for a decree subjecting the property to the lien of plaintiff's judgment against Clarence Manning. The trial court held that the property was exempt as a homestead; also that plaintiff's judgment was discharged in the bankruptcy proceeding, and dismissed the complaint. Plaintiff appeals.

Three questions are presented on the appeal. (1) Could a homestead right attach to this property while a life estate existed in a third party? (2) Was plaintiff's judgment against defendant Clarence Manning dischargeable in bankruptcy? (3) Did the action of the bankruptcy court in setting aside the property as a homestead extinguish plaintiff's lien? We will consider them in order.

(1) A homestead exempt from forced sale is fixed by the Constitution of the state (article 22, § 1) and by the statutes (title 38, R. S. Utah 1933). This right has by this court been defined in a number of cases as an absolute right which neither the Legislature nor the courts can infringe, and that laws relating to the exemption rights to a homestead should be liberally construed. Our statute differs from those of most states. Ours makes no requirement that the property be actually "used as a home," or must be "owned in fee," or such conditions generally found in homestead exemption statutes. Our statute merely provides that a homestead consisting of lands, appurtenances, and improvements, which lands may be in one or more localities, not exceeding specified values, shall be exempt from judgment lien and from execution or forced sale, except for taxes and mortgages thereon. Section 38-0-1, R. S. 1933. This homestead may be claimed by the husband or wife, and from the property of either. Sections 38-0-6, 38-0-8 and 38-0-9, R. S. 1933. It is not necessary to assert the claim until after levy of execution, and the proceeds from sale of homestead property are exempt.

The court has repeatedly held that the homestead right is founded on a public policy, deemed by the organic law itself as fundamental to the making of good citizens in a free government, and is one of the foundation stones upon which stability of government such as ours rests. We have repeatedly held that this statute is remedial and to accomplish its beneficent purpose should be broadly construed. *Kimball* v. *Salisbury*, 17 Utah 381, 53 P. 1037; *Hansen* v. *Mauss*, 40 Utah 361, 121 P. 605; *Payson Exch. Sav. Bank* v. *Tietjen*,

63 Utah 321, 225 P. 598; *Utah Builders' Supply Co.* v. *Gardner,* 86 Utah 250, 39 P. (2d) 327, 329, 103 A. L. R. 928; *Id.,* 86 Utah 257, 42 P. (2d) 989, 990 103 A. L. R. 932. In Sec. 1 of Thompson on Homestead and Exemptions, the author has expressed his views on the homestead exemption law in the following language:

"The wise and benevolent policy which dictated the enactment of these laws has been the theme of considerable forensic and judicial eloquence. The late Senator Benton, advocating in the United States Senate the adoption of a general homestead policy, said: 'Tenantry is unfavorable to freedom. It lays the foundation for separate orders in society, anihilates the love of country, and weakens the spirit of independence. The tenant has, in fact, no country, no hearth, no domestic altar, no household god. The freeholder, on the contrary, is the natural supporter of a free government; and it should be the policy of republics to multiply their freeholders, as it is the policy of monarchies to multiply their tenants.' 'There is,' said Tarbell, J., in a case in Mississippi, 'unquestionably no greater incentive to virtue, industry, and love of country than a permanent "home," around which gather the affections of the family, and to which the members fondly turn, however widely they may become dispersed.' * * *

"And we find scattered through the cases which involve the construction of these laws such expressions as these: 'This beneficent provision for the protection and maintenance of the wife and children against the neglect and improvidence of the father and husband.' 'That the homestead exemption was founded upon principles of the soundest policy cannot be questioned. Its design was, not only to protect citizens and their families from the miseries and dangers of destitution, but also to cherish and support in the bosoms of individuals those feelings of sublime independence which are essential to the maintenance of free institutions. These are noble objects.' 'It was an enlightened public policy, looking to the general welfare as well as to that of the individual citizen, which dictated the passage of the homestead act; and the obvious intent of the act is to secure to every householder or head of a family a home, a place of residence, which he may improve and make comfortable, and where the family may be sheltered and live beyond the reach of those financial misfortunes which even the most prudent and sagacious cannot always avoid.' "

Our statute, being so designed, must be construed and interpreted to give effect to the purposes and objects the fram-

ers of the Constitution and the Legislature had in mind in the enactments. The homestead, in addition to the noble and sentimental reasons set forth by Thompson, is to secure to the family two practical necessities—shelter and support. These things, for the safeguarding of the family unit, the health of the people, and the rearing of good citizens, have been deemed of more importance, of higher worth, than the matter of financial relations between debtor and creditor. The state having declared and established such public policy, all business relationships are made and entered into with knowledge thereof and in reliance thereon. To assure support to the family, it is provided that the homestead may be in several tracts, that it need not be a dwelling or occupied as a home, and need not all be in one county. If it is used so as to contribute to the support or maintenance of the family, or its sense of security, it may be claimed as a homestead. But the homestead exemption is also established to provide for the family the element of shelter—shelter from the elements, shelter from the public, shelter from disturbance and annoyance from the outside world. It is to assure a haven of rest, a place where children may enjoy a paradise of mother's love to soothe their hurts and heal their wounds, and where husband and wife may sit in the calm of the evening, shut in from the world, forget the toils of the road, and enjoy again the comfort and peace of early dreams come true, and the realization of the love nest they planned in the halcyon days of youth. Property which contributes to these objectives, providing either support or shelter, may be claimed as a homestead up to the specified values and secured from lien or forced sale. The object is to assure to the unfortunate debtor, and his equally unfortunate but more helpless family, the shelter and influence of the home; and in its promotion courts may well employ the most liberal and humane rules of interpretation. In the language of Mr. Chief Justice Folland in *Utah Builders' Supply Co.* v. *Gardner*, supra:

"Under the Constitution, article 22, § 1, and statute, R. S. Utah 1933, 38-0-1 to 38-0-19, as interpreted and applied by this court, the

head of a family is thus fully protected in his homestead rights to the value provided by statute, because such rights are 'founded upon public policy for the protection of the home and the prosperity of the state, carrying out the policy of republics to encourage and multiply freeholders, the natural supporters and defenders of a free government.' (*Volker-Scowcroft Lumber Co.* v. *Vance,* 32 Utah 74, 88 P. 896, 899, 125 Am. St. Rep. 828), a 'homestead right is for the benefit of the family, and such right cannot be frittered away even by the head of the family' (*Payson Exch. Sav. Bank* v. *Tietjen,* supra), and because the 'homestead exemption is not a privilege conferred upon the head of the family, but an absolute right.' *Kimball* v. *Lewis,* 17 Utah 381, 53 P. 1037, 1039."

"The right is a shield which may be raised to ward off the shafts or arrows of 'execution or forced sale.' It is not an estate in or a lien on the land, such as a life estate or a mortgage or lawful mechanic's lien."

These are two bases or interests in real property upon which a homestead right may be predicated and which may give rise to a claim of homestead—title and possession. The homestead exemption protects alike both of the interests, and may be founded or asserted to protect either one. A claimant with title may have only a constructive possession, as where the property is leased or rented and the income therefrom contributes to the family support. To protect this source of support and income for the family, a claim of homestead may be made to bar a lien on or forced sale of the property. *Payson Exch. Sav. Bank* v. *Tietjen,* supra; *Kimball* v. *Salisbury,* 19 Utah 161, 56 P. 973; *Hubbell* v. *Canady,* 58 Ill. 425; *Utah Builders' Supply Co.* v. *Gardner,* supra; *Kimball* v. *Salisbury,* 17 Utah 381, 53 P. 1037; *Hogan* v. *Manners,* 23 Kan. 551, 33 Am. Rep. 199. And where title is not in the debtor, but possession is, a claim of homestead is valid to protect that possession for the benefit of the family. Thus, possession under a lease will sustain a claim of homestead whether the leasehold is for a long tenure or but a single year. Said the Supreme Court of Kansas in *Hogan* v. *Manners,* supra:

"A leasehold estate in land is therefore 'land,' * * * and an owner of the leasehold estate is an owner of land; and it matters not whether

the duration of this estate be ninety-nine years, or but a single year; the character of the title or estate is the same. The owner of a leasehold estate is therefore within the letter of the homestead law; he is also within the spirit. Its purpose is not so much to give a man property as to secure his family a home."

The foregoing case was followed in *Grattan* v. *Trego* (C. C. A. 8th, 1915) 225 F. 705, 34 A. B. R. 889. *Maatta* v. *Kippola*, 102 Mich. 116, 60 N. W. 300; *In re Emerson's Homestead*, 58 Minn. 450, 60 N. W. 23; *Beranek* v. *Beranek*, 113 Wis. 272, 89 N. W. 146; *Miller* v. *Farmers State Bank*, 137 Okl. 183, 279 P. 351; *In re Irving* (D. C.) 220 F. 969, ■ 34 A. B. R. 399; *Weber* v. *Short*, 55 Ala. 311; *In re Beckerford*, Fed. Cas. No. 1,209, 1 Dill 45. And the courts have said that any estate or interest in land that can be sold under execution will support a claim of homestead, because the homestead right is to afford protection against execution sales. *Conklin* v. *Foster*, 57 Ill. 104; *White* v. *Danforth*, 122 Iowa 403, 98 N. W. 136; *In re Irving*, supra. And one who has a contract of purchase, but has not paid the full purchase price, has an interest in land which he can protect as a homestead. *Hansen* v. *Mauss*, 40 Utah 361, 121 P. 605, 21 Cyc. 502; *Alexander* v. *Jackson*, 92 Cal. 514, 28 P. 593, 27 Am. St. Rep. 158. Some courts have gone to the extent of holding that a purchaser under parol agreement, who is in actual occupancy of the premises, may claim a homestead right therein. *Helgebye* v. *Dammen*, 13 N. D. 167, 100 N. W. 245; *Longmaid* v. *Coulter*, 123 Cal. 208, 55 P. 791; *Blue* v. *Blue*, 38 Ill. 9, 87 Am. Dec. 267; *McKee* v. *Wilcox*, 11 Mich. 358, 83 Am. Dec. 743. A mortgagor or grantor in a deed of trust may claim a homestead in the equity of redemption. And where the precise question has been before the courts, the prevailing view is that, in the absence of a statute expressly to the contrary, a mere naked possession without any title whatever, will support a homestead right against all the world except the owner, on the principle that a right of sufficient value to be coveted by creditors is of value to the debtor sufficient to be protected. *Spencer* v. *Geissman*, 37

Cal. 96, 99 Am. Dec. 248; *Gaylord* v. *Place*, 98 Cal. 472, 33 P. 484; *Vogler* v. *Montgomery*, 54 Mo. 577; *Birdwell* v. *Burleson*, 31 Tex. Civ. App. 31, 72 S. W. 446; *Watterson* v. *E. L. Bonner Co.*, 19 Mont. 554, 48 P. 1108, 61 Am. St. Rep. 527.

Can then a creditor, where the debtor is the owner of an estate in remainder, that is, the holder of the legal title subject to a life estate and where the debtor (remainderman) is in sole and exclusive possession of the premises under a leasehold right, segregate the debtor's legal title from his possessory right and sell the former under execution? Appellant has cited authorities from a number of jurisdictions holding that a homestead right cannot attach to a vested or a contingent future estate. An analysis of such cases discloses they are cases where the remainderman was not in exclusive possession. Claimant either did not occupy the premises at all, or occupied them jointly with the life tenant, who claimed or had by law a homestead therein under statutes which vested the homestead right merely in the lawful occupant, or in the property actually used as a "home," the courts saying that two separate homesteads could not exist at the same time in the same property, and under the statute of the particular state, one not in occupancy could not claim a homestead.

Such a case is *In re Sale* (C. C. A. Ky.) 143 F. 310 (emphasized by appellant) where the court declared it was not an estate, but a right of occupancy, that was exempted under the Kentucky statute. As to whether the holder of a fee, subject to a life estate in another, the life tenant being in possession, may claim a homestead in the property is not now before us and on that matter, therefore, we express no opinion. In the instant case, however, where the holder of the fee was in exclusive possession and occupancy of the premises and had been since he received the fee in 1904, occupying the same as his home and paying the life tenant an annual rental, we have no hesitancy in saying that he can assert a homestead, free from judgment

lien and execution, as long as he has exclusive occupancy of the premises as his home. The trend of the later decisions, even under statutes less liberal than ours, supports this view.

"Homestead rights may attach to any interest in real estate which constitutes the dwelling place of the family, [affords it maintenance or shelter], and where, subject to a life estate, there is a present vested fee title subject to the life tenant's rights, including the right to collect rent."

*Lehman* v. *Tucker*, 176 Okl. 286, 55 P. (2d) 62, 63; *In re Wineland* (D. C.) 3 F. Supp. 796; *Gibbes* v. *Hunter*, 99 S. C. 410, 83 S. E. 606; *Grattan* v. *Trego* (C. C. A.) 225 F. 705; *Miller* v. *Farmers State Bank*, 137 Okl. 183, 279 P. 351.

Be it noted that neither the Constitution nor the statute prescribes or defines or limits any title or estate which may be claimed as a homestead. The Constitution says that the Legislature shall provide for the exemption of a homestead, consisting of one or more parcels of land, not exceeding specified values, with appurtenances and improvements thereon. Article 22, § 1. The statute exempts the homestead, the proceeds if sold, and the insurance from loss on a homestead from lien or forced sale. It may be selected from any property of husband or wife, or both, and by either, regardless of the estate or interest therein, the only limitation being one of value. Title 38, R. S. 1933.

Appellant contends that she has no desire to disturb the occupancy under the lease, but merely to reach the estate in remainder. She does not desire to disturb the possession but seeks to take the title. She would cut up the estate of the debtor so as to reach one interest because she cannot take it all. Property exempt as a homestead may not be cut up into divers estates. Such laws protect the physical thing as a whole from lien or sale so long as the exemption continues.

The right of exemption would be a hollow thing if a creditor could alienate the title from the occupancy, and thus do by indirection what the statute and Constitution forbid him

to do directly. The administration of the exemption law should comport with the beneficent spirit which prompted its enactment. A court of equity should not attempt to defeat the exemption by niceties in practice. It should be helpful to those whose condition requires it to invoke the law. And if the home be secured, what matters it by what title or tenure it is held? In reason, it cannot be said that one who has a leasehold may protect it by claim of homestead, but if he also have title, his title may be divested by a creditor and thus nullify and void his occupancy by cutting away from him his title. Such construction would frustrate the obvious intention of the framers of the Constitution, and require the court to read into the statute a provision which the lawmakers saw fit to omit. The court cannot whittle down the exemption by undermining and cutting at its roots.

"It will be noticed that both the constitution and statute provide for a homestead to be selected by the head of the family. Doubtless, under these instruments, where the land is owned and occupied by the judgment debtor and his family, such ownership and occupancy will be notice to all the world of their homestead rights." *Kimball* v. *Salisbury*, 19 Utah 161, 56 P. 973, 975, supra; *Bunker* v. *Coons*, 21 Utah 164, 60 P. 549, 81 Am. St. Rep. 680.

We find, therefore, no error in the action of the trial court in refusing to impress a lien on this property, it being exempt as a homestead.

(2) Was plaintiff's judgment against Clarence Manning dischargeable in bankruptcy? It was properly scheduled and was a provable debt in bankruptcy, and the creditor (plaintiff herein) participated in all the hearings and proceedings in the bankruptcy court after the filing of the schedules. But plaintiff contends that the judgment was not dischargeable under Title 11, § 35, of the United States Code Annotated, being the Bankruptcy Act (section 17), which provides, inter alia, that a discharge shall release a bankrupt from all his provable debts except "(second) * * * liabilities for * * * willful and malicious injuries to the person or property of another." It is appel-

lant's position that the judgment against defendant was for a "wilful and malicious injury." Whether the act on which a damage judgment is based was "willful and malicious" is a question of law for the court and must be determined from the record of the court in which the judgment was recovered. *Fleshman* v. *Trolinger*, 18 Tenn. App. 208, 74 S. W. (2d) 1069. Plaintiff put in evidence the findings of fact upon which the judgment was based, wherein the court found that the defendant in that action:

" * * * did nevertheless then and there so negligently, carelessly and recklessly drive and operate his said automobile that he drove and operated the same into, upon and against the body and person of said Ray Anderson, who was then upon the east shoulder of said highway as aforesaid, with such force and violence as to kill instantly the said Ray Anderson, the particular negligent, careless and reckless acts of commission and/or omission, then and there done, or being done, or neglected to be done by said defendant, Clarence Manning, in the driving and operation of his said automobile at said time and place and which the Court now finds to have been the sole and (ap) proximate cause of the injury to and death of said Ray Anderson, being as follows, to-wit:

"That after seing and knowing that said bus, stopped upon said highway at the point as hereinbefore set forth, was a school bus and then being used for transporting minor children, said defendant, Clarence Manning, did then and there fail and omit to keep a proper lookout ahead for children who were then and there being unloaded and discharged from said bus, and particularly for said Ray Anderson who was then being unloaded and discharged from the same.

"That said defendant, Clarence Manning, after seeing and knowing that children were being discharged from said bus, did then and there fail and omit to have and keep his said automobile under such control as to avoid colliding with and striking the body and person of said Ray Anderson after, the said Ray Anderson, came out from behind said bus and crossed said highway."

The contention is that the word "recklessly" means "wantonly" and that "wantonly" in law is equivalent to maliciously." It is settled by a long line of decisions that a judgment for injuries founded on negligence is dischargeable. 6 Am.

Jur. § 506; *Bissing* v. *Turkington,* 113 Conn. 737, 157
A. 226, 81 A. L. R. 146, 19 A. B. R. (N. S.) 251; 
*Tinker* v. *Colwell,* 193 U. S. 473, 24 S. Ct. 505, 509,
48 L. Ed. 754, 11 A. B. R. 568; *Ex parte Harrison* (D. C.)
272 F. 543, 47 A. B. R. 80; *Ely* v. *O'Dell,* 146 Wash. 667,
264 P. 715, 57 A. L. R. 151. And the later cases in the fed-
eral courts, without exception, as well as most of the state
courts, hold that a pleading or a finding that the judgment
was based upon the reckless, negligent and unlawful oper-
ation of an automobile does not bring it within the exception
of the statute. *In re Madigan* (D. C.) 254 F. 221; *In re Cun-
ningham* (D. C.) 253 F. 663; *In re Roberts* (D. C.) 290 F.
257; *Ex parte Harrison,* supra; *Ely* v. *O'Dell,* supra; *Tippett*
v. *Sylvester* (N. J. Sup.) 127 A. 321; *Nunn* v. *Drieborg,* 235
Mich. 383, 209 N. W. 89; *Poznanovic* v. *Gilardine,* 174 Minn.
89, 218 N. W. 244, 57 A. L. R. 148; *Bazemore* v. *Stephenson,*
24 Ga. App. 180, 100 S. E. 234; *Tinker* v. *Colwell,* supra;
*In re Phillips* (D. C.) 298 F. 135; *In re Wilson* (D. C.) 269
F. 845; *In re Lusch* (D. C.) 251 F. 316. We quote from the
Vermont Court in *Re Grout,* 88 Vt. 318, 92 A. 646, 647, Ann.
Cas. 1917A, 210:

"These declarations allege that the defendant recklessly, carelessly,
and negligently ran into the plaintiff wife and knocked her down.
There is no allegation that this was done intentionally, willfully, or
maliciously. There is nothing in the nature of the violence alleged that
indicates intention or malice. There is no allegation of accompanying
language characterizing the act as malicious. The addition of the
word 'recklessly' to the terms more commonly used does not change
the nature of the allegation. The characterization of the defendant's
act is doubtless intensified, but it still remains a charge of negligence.
In suffering a default, the defendant conceded nothing beyond this,
and nothing more can be implied from the judgment. One can be liable
in a civil action for direct violence to the person of another without
there having been malice, or intention to injure, or an intention to do
the act which caused the injury. *Judd* v. *Ballard,* 66 Vt. 668, 30 A.
96."

The cases cited above hold that there must be, in such ac-
tions as are founded on negligence, a showing that the act

was done intentionally and maliciously, that is, further than the usual allegations or findings of negligence.

The liability underlying this judgment is a provable debt in bankruptcy. It being a provable debt, the burden is on the judgment creditor to show that such liability comes within the exception to the statute. *In re Grout,* supra; *In re Levitan* (D. C.) 224 F. 241. This burden she has not sustained. The record negatives any such wrongdoing as is necessary to constitute malicious and willful ▆▆▆ wrongdoing within the meaning of the act. Of course, a spirit of spite, hate, and malevolence is not essential; but there must be something more than an intention to do an act which is found later to be wrong and inexcusable. The wrong, to be excluded from the discharge, must be both willful and malicious. The doing of the act intentionally and voluntarily meets the requirement of willful but not that of being malicious. The use of both terms means that the latter implies something more than is included in the former. It is malicious when the injurious consequences which follow the act are such as might naturally be expected to result from it, and which he may be presumed to have had in mind when he committed the offense. "Malice," said Mr. Justice Peckham in *Tinker* v. *Colwell,* supra,

"in law, simply means a depraved inclination on the part of a person to disregard the rights of others, which intent is manifested by his injurious acts. * * * We think a wilful disregard of what one knows to be his duty, an act which is against good morals, and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done wilfully and maliciously, so as to come within the exception."

(3) Appellant argues that even though the judgment may be dischargeable in bankruptcy, yet plaintiff's lien under her judgment attached to the property, and she should be permitted to enforce her lien even though she can assert no personal rights against Manning. Our holding that this property is subject to a homestead claim prevents a ▆▆▆ lien from attaching to it. But there are other reasons

why plaintiff cannot in this action successfully assert and maintain a lien against the property in question. The lien plaintiff claims is not founded on a contract or waiver of exemption rights, but is based upon a judgment for tortious acts, and if she has a lien it must be one impressed by law by virtue of the judgment. Plaintiff was merely a general creditor of defendant. Her judgment was acquired within four months prior to adjudication of bankruptcy and the lien was by such adjudication extinguished. Bankr. Act. § 67f, as amended, 11 U. S. C. A. § 107 (f) ; *Clarke* v. *Larremore*, 188 U. S. 486, 23 S. Ct. 363, 47 L. Ed. 555, 9 A. B. R. 476; *Thompson* v. *Ragan*, 117 Ky. 577, 78 S. W. 485. With liens acquired under state laws, the provisions of the bankruptcy act are superior to all state laws upon the subject by virtue of the constitutional authority of Congress to enact a uniform system of bankruptcy. *Globe Bank & Trust Co. of Paducah* v. *Martin*, 236 U. S. 288, 35 S. Ct. 377, 59 L. Ed. 583; *Chicago, B. & Q. R. Co.* v. *Hall*, 229 U. S. 511, 33 S. Ct. 885, 57 L. Ed. 1306, 30 A. B. R. 619. Since we hold that this judgment was not within the exception and is dischargeable, the lien could not survive the discharge of the debt and was extinguished by such discharge.

Furthermore, the bankruptcy court extinguished and denied any claim of plaintiff to a lien when it held the property exempt as the homestead of the bankrupt. Courts of bankruptcy have jurisdiction to "determine all claims of bankrupts to their exemptions." Bankr. Act. § 2, as amended, 11 U. S. C. A. § 11; *Lucius* v. *Cawthon-Coleman Co.*, 196 U. S. 149, 25 S. Ct. 214, 49 L. Ed. 425, 13 A. B. R. 696; 6 Am. Jur. 620. Quoting from the authority last cited:

"The Bankruptcy Act provides that the trustee shall set apart the bankrupt's exemptions, and report the items and estimated value thereof to the court. An order of the bankrupt court, not reversed on appeal or revision, awarding certain property to the bankrupt as exempt is a conclusive judgment as between the bankrupt and his creditors, that the property was so exempt at the time of the filing of the petition in bankruptcy, and unless absolutely void, it cannot be collat-

erally attacked in a state court." *Smalley V. Laugenour*, 196 U. S. 93, 25 S. Ct. 216, 49 L. Ed. 400, 13 A. B. R. 692; *Simpson* v. *Houston*, 97 N. C. 344, 2 S. E. 651, 2 Am. St. Rep. 297.

Plaintiff participated in the hearing before the referee when the property in question was set apart as exempt to the bankrupt. In opposition thereto, she again urged before the court itself, that the property was not exempt, but subject to claims of creditors and especially her claim. The court ruled against her. No appeal or application for a revision has been taken and she is concluded by the judgment.

We find no error in the record. The judgment of the lower court is affirmed; respondents to recover costs.

FOLLAND, C. J., and EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.