The husband of the deceased has appealed from an adverse judgment of the Third District Court on his application for an order setting apart to him a homestead and exempt personal property from the estate of the deceased.
Gwen Darling Parry Petersen died February 7, 1937, leaving her surviving a husband, appellant herein, no children, and a sister, Florence L. Parry, respondent. To the last named, she devised and bequeathed all her separate property consisting of an undivided one-half interest in a parcel of real estate in Salt Lake County which interest was worth $3,000; personal property which included tables and chairs worth less than $200 and money, bed, bedding, silverware, glassware, and linen worth $300. Mr. and Mrs. Petersen had never lived on the parcel of property devised by the will but had resided in Sandy, Salt Lake County, on a tract of land owned by the husband and worth $2,000. The facts are stipulated.
Florence L. Parry filed an inventory of the estate, following which the plaintiff instituted this proceeding, requesting the court to set apart to him a homestead of $2,000 in the devised property, the tables and chairs worth less than $200, the dishes, silverware, etc., worth $300. Defendant alleged in her answer that the property was the separate property of the deceased which she had a right to dispose of by will; that the plaintiff owned a home and homestead in Sandy worth more than $2,000 above encumbrances and kitchen and household goods and furnishings of a value in excess of the exemptions provided for by law; and denied that the plaintiff has any interest in or claim against the estate. As hereinabove stated, appellant's application was denied.
The assignments of error raise three principal questions: (1) Under the Constitution and statutes of Utah can a surviving *Page 327 
husband declare a homestead in the wife's separate property which she has devised to another? (2) Can a homestead be set apart in property on which the parties have not lived and which is held in cotenancy? (3) Can a homestead be set apart to a surviving spouse who owns and possesses property of value in excess of the homestead exemption?
(1) Respondent admits that under Sec. 101-4-6, R.S.U. 1933, and the case of In re Mower's Estate, 93 Utah 390, 73 P.2d 967, a husband cannot deprive his widow of her homestead allowance by devising his property away from her; and she admits that under a dictum of the Mower case the same rule is applicable to efforts of a wife to deprive her surviving husband of a 1-3 homestead; but she contends that Article XXII, Sec. 2 of the Constitution forbids application of the dictum since the Constitution gives a married woman the right to dispose of all of her separate property by will and if a homestead were carved out against her will she would have disposed of that much less than all by her will. For authority in support of this position respondent cites to us excerpts from the Proceedings of the Constitutional Convention and Bennett v. Hutchinson,11 Kan. 398, 26 Pacific State Rep. 301.
Article XXII, Section 2, of the Constitution provides:
"Real and personal estate of every female, acquired before marriage, and all property to which she may afterwards become entitled by purchase, gift, grant, inheritance or devise, shall be and remain the estate and property of such female, and shall not be liable for the debts, obligations or engagements of her husband, and may be conveyed, devised or bequeathed by her as if she were unmarried."
Section 101-4-6, R.S.U. 1933, reads as follows:
"A homestead as provided by section 1, title Homesteads, together with all personal property exempt from execution, shall be wholly exempt from the payment of the debts of the decedent, and shall be the absolute property of the surviving husband or wife and minor children, or of the minor children in case there is no surviving husband or wife, or of the surviving husband or wife in case there are no minor children, to be set apart on petition and notice, at any time after the return of the inventory." *Page 328 
The Proceedings of the Constitutional Convention, pages 1782-1784, seem to afford no help to respondent. A reading of all of the brief discussion of this section seems fairly to indicate that the members intended to give married women the right to keep and acquire separate property and dispose of it without hindrance from their husbands. The question of its effect on a husband's homestead right was not discussed one way or the other, although discussion of the homestead exemption section, which is Section 1 of Article XXII, immediately preceded that of this section. It is true that Mr. Varian said that the section would give a married woman her own property, "to be disposed of just as she sees fit," but he added, "without any control or limitation by the husband." It is patent that he had in mind giving women the right to dispose of their property without having to act through their husbands or with their consent. The remark was in response to the introduction of an amendment which would have required the husband's signature for disposition of the wife's separate property. Reference to these proceedings affords respondent but little help and seems rather to indicate that the framers of the Utah Constitution intended to remove married women's common law disability and gave no intimation that the word "all" was meant to restrict the power of the legislature to provide for a homestead in aid of the welfare of survivors of a married woman.
The very wording of the section in our opinion evidences this intent. The provision deals with the separate estate of a married woman — that acquired before marriage and all such to which she may thereafter become entitled. It provides that such property "shall be and remain the estate and property of such female" — that is, marriage shall not divest her of title in any of her property real or personal, nor vest any estate therein in her husband. It "shall not be liable for the debts, obligations or engagements of her husband." Absent statutory or constitutional provision, it, or a portion thereof, would be so liable at common law. It "may be conveyed, devised or bequeathed by her as if she were unmarried." *Page 329 
This means that she may deal with her property, in the respects enumerated, as she might deal with it at common law were there not disabilities in the wife and estate vested in the husband by reason of marriage. The extent of the wife's common law disabilities and the nature of the husband's interest in the wife's estate at common law need not be here detailed. It is evident, however, that the very wording of the constitutional provision is such as to evidence an intent (1) to do away with the common law doctrines under which there was created by law an estate in the husband as an incident to marriage; and (2) so freeing it from such interest of the husband, give to the wife the right to dispose of it. Looking at the provision against its common law background, there is nothing in its wording which evidences an intention upon the part of its authors to go further and inhibit the legislature from placing upon the right to devise the limitation here in question. Its evident aim was to bring about equality, not inequality, between the parties to a marriage contract.
We have heretofore committed ourselves, in dicta, to this view. In re Mower's Estate, supra; Williams v. Peterson,86 Utah 526, 46 P.2d 674; Morrison, Merrill Co. v. Clark,20 Utah 432, 59 P. 235, 77 Am. St. Rep. 924; Culmer v. Wilson,13 Utah 129, 44 P. 833, 57 Am. St. Rep. 713. And in the Mower case we stated our view of this very question. The Morrison, Merrill v. Clark and Culmer v. Wilson cases were decided under Sec. 2528, Comp. Laws of 1888, which plainly provided that the husband and wife should have the same rights, and those cases are therefore not authority for the question under a provision dealing only with women's rights. But in Re Mower's Estate
[93 Utah 390, 73 P.2d 972] the right to dispose of an estate by will, paramount to homestead claim, was before us and our expressed view that the married woman is free from marital control but has, by virtue of Article XXII, Section 2 of the Constitution and Sec. 101-1-3, R.S.U. 1933, "no rights different from those of her husband" was not given without consideration. *Page 330 
Our obiter dictum in the Mower case, expressed at page 402 of 93 Utah, at page 972 of 73 P.2d, seems sound in view of further consideration and analysis. We there said: 4
"Now as to section 101-1-3, relative to married women making wills, that section has no conflicts with the position we have taken. It was enacted pursuant to section 2 of article 22 of the State Constitution, to insure to women the new freedom and equality conferred upon them by the Constitution; freedom from the disqualifications of coverture, freedom from domination and control of their husbands, the right to handle their property and contractual rights, not under the control, dominion, or orders of their husbands. * * * This is merely a freedom from marital control and confers no rights different from those of her husband."
Other authorities lend support to our continued adherence to this view. Flanner v. Flanner, 160 N.C. 126, 75 S.E. 936,937; Alexander, Commentaries on Wills, Sec. 310; Waples on Homestead and Exemptions, page 124. In Flanner v. Flanner, supra, plaintiff's mother, prior to his birth, made a will devising all of her estate to her husband. She died without having changed or revoked such will. A statute of North Carolina provided that children born after the making of the parent's will, and when parent shall die without making any provision for them, shall be entitled to such share of the parent's estate as if he or she had died intestate. One contention of defendant was that this statute should not be given effect in that it deprived a married woman of the right to dispose of her property by will which right was given her by the Constitution of North Carolina. Answering such contention the court said:
"* * * but the position involves a misconception of the meaning of this provision as applied to the facts of the present case. The section referred to, after providing that the property of a married woman acquired before marriage, and all to which she may become entitled to afterwards, shall remain her sole and separate estate, etc., continues as follows: `And may be devised and bequeathed and with the written assent of her husband conveyed by her as if she were unmarried.' This right to dispose of property by will is a conventional *Page 331 
rather than an inherent, right, and its regulation rests largely with the Legislature, except where and to the extent that same is restricted by constitutional inhibition. Thomason v. Julian, supra [133 N.C. 309, 45 S.E. 636]; Underhill on Wills, p. 1; 2 Blackstone, Comm. pp. 488-492.
"Being property advertent to this principle, a perusal of the section relied upon will disclose that its principal purpose, in this connection, was to remove, to the extent stated, the common-law restrictions on the right of married women to convey their property and dispose of same by will, and was not intended to confer on them the right to make wills freed from any and all legislative regulation. The right conferred is not absolute, but qualified. She may `devise and bequeath her property and with the written assent of her husband convey the same as if she were unmarried,' and not otherwise."
The case of Bennett v. Hutchinson, supra, cited by respondent, is not apposite. There a Kansas statute of 1859 prohibited a married woman from bequeathing more than half her separate property away from her husband without his consent. In 1865 an act was passed relating to wills and giving "any person" power to devise any property, subject to rights of creditors. This was held to be an implied repeal of the earlier acts and to enable a married woman to devise all of her estate away from her husband without his consent. The court was impelled to this conclusion partly by the circumstances that the 1865 act included a proviso that a word importing the masculine gender should be applied to females and that a section gave a widow the right to elect between the will and one-half of her husband's estate without giving a correlative right to husbands. But the language of the act of 1865 was so dissimilar to our constitutional provision that it affords no aid in determining the meaning of the latter.
More favorable to respondent's contention are Williams v.Massie, 212 Ala. 389, 102 So. 611; Gray v. Weatherford,227 Ala. 324, 149 So. 819; and Tiddy v. Graves, 126 N.C. 620,36 S.E. 127. Section 209 of the Alabama Constitution (1901) is, in all its essentials for this case, identical with our constitutional provision. In Williams v. Massie, supra, the minor children of their deceased mother sought to establish *Page 332 
a homestead exemption in her separate property which she had devised to her husband, which property, after his death, his second wife was claiming as against the children. A statute gave the children such an exemption, but it was contended by the second wife that the constitutional provision was absolute and gave married women a right to dispose of all of her property without statutory diminution for any purpose. The court rejected this argument but curiously, in rejecting it seems to have made a construction favorable to respondents in the case at bar. The court said [212 Ala. 389, 102 So. 612]:
"* * * but this section of the Constitution and its prototype in the Constitution of 1875, notwithstanding labored arguments to the contrary, appear to us to intend to secure the rights of married women as against their husbands, and have no relation whatever to the case under consideration."
The exclusion of the husband was dictum, but it was referred to again by way of dictum as the recognized rule in the later case of Gray v. Weatherford, supra. There the wife claimed homestead exemption in her husband's property contrary to his will, and the court upheld her right adding:
"The wife, on the other hand, by constitutional provision may devise her estate as if she were sole, at least as against her husband. Constitution of 1901, § 209; Williams v. Massie,212 Ala. 389, 102 So. 611."
In Tiddy v. Graves, supra, the plaintiff claimed the husband's right of curtesy, rather than homestead, against the defendant who relied on a married woman's right to devise all her property free of curtesy under a constitutional provision similar to ours. The court held the Constitution gave an absolute right which precluded curtesy, where the wife died testate. This pronouncement, it will be observed, is by the same court which inFlanner v. Flanner, supra, approved the statutory restriction therein dealt with.
The holding with respect to tenancy by the curtesy may not be necessarily inconsistent with a recognition of a right *Page 333 
of homestead in a surviving husband under the same constitutional provision. Curtesy was an estate for life in the husband, created by marriage and the birth of lawful issue. It vested in the husband in the life time of the wife. It was a 5 common law estate which was among those property interests of the husband carved out of the wife's estate, the abolition of which was the aim of the constitutional provision. Whether or not such distinction between tenancy by the curtesy and homestead rights in a surviving husband be valid, in so far as the right to devise is concerned, we adhere to the position that the Constitution of this State effects equality between husband and wife in so far as disposing of his or her separate property by will is concerned, and hence the statute reserving to the survivor of either a homestead is not in contravention of the Constitution.
To hold that the Constitution precludes the legislature from making homestead provisions for a surviving husband, where the wife died testate, would seem logically to necessitate a holding that her children might also be deprived, despite the statute, of their homestead in her property. If Section 2 of Article XXII went further than to remove the wife's disabilities and wipe out the husband's common law estate and meant that the wife might bequeath and devise all of her property without statutory restriction, then a homestead provision for her children would offend against the Constitution, since it would preclude her to such extent from devising all of it quite as much as would a statutory provision in favor of the husband. To the extent that the dicta of the Alabama cases, supra, derive a different rule as to the husband than applies to the children, they seem illogical. The very argument of such dicta to the effect that the constitutional provision in question was to secure the rights of married women as against their husbands, only, points to the construction here given of such provision.
(2) It is not a valid objection to a claim of homestead in this state that the parties have not resided on the property. *Page 334 Folsom v. Asper, 25 Utah 299, 71 P. 315; Volker-ScowcroftLumber Co. v. Vance, 36 Utah 348, 103 P. 970, 24 L.R.A., N.S., 321, Ann. Cas. 1912A, 124; Payson Exchange SavingsBank v. Tietjen, 63 Utah 321, 225 P. 598; Zuniga v. 6Evans, 87 Utah 198, 48 P.2d 513, 101 A.L.R. 532;Panagopulos v. Manning, 93 Utah 198, 69 P.2d 614. Or that the property is held in cotenancy with a stranger. Hansen v.Mauss, 40 Utah 361, 121 P. 605; Panagopulos v. Manning, supra, at 93 Utah page 203, 69 P.2d 614; In re Banfield,137 Or. 167, 296 P. 1066, 298 P. 905, 89 A.L.R. 511, 540-548.
(3) The amount of property owned by the person claiming homestead is not material to a determination of whether homestead shall be allowed. The statutes (R.S.U. 1933, Title 38 and Title 101, Sec. 4-6) indicate no such limitation and the homestead laws are to be liberally construed. Utah Builders' Supply Co. v.Gardner, 86 Utah 250, 39 P.2d 327, 103 A.L.R. 928;Panagopulos v. Manning, supra; In re Mower's Estate, 7-9 supra, at page 403 of 93 Utah, 73 P.2d 967. Section 101-4-6, R.S.U. 1933, requires no showing of dependence on a homestead and no reason appears why we should require such. See also Abramson v. Larabee, 140 La. 825, 74 So. 162; Furtner v.Edgewood Distilling Co., 16 Tex. Civ. App. 359, 41 S.W. 184; 29 C.J. 790.
The judgment of the District Court is therefore reversed and the cause remanded with directions to proceed in accordance with the views expressed herein.
MOFFAT, C.J., and WOLFE, LARSON, and PRATT, JJ., concur. *Page 335